1   Michael Rapkine (# 222811)
      mrapkine@afrct.com
2   D. Dennis La (# 237927)
      dla@afrct.com
3   AFRCT LLP
    301 N. Lake Avenue, Suite 1100
4   Pasadena, California 91101-4158
    Telephone: (626) 535-1900
5   Facsimile: (626) 577-7764

6   Attorneys for Defendant
    WELLS FARGO BANK, N.A.

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   CONCETTA MANZANO S., GEORGE F.          CASE NO.:
     SEMEIL, JR.,
12                                           **NOTICE OF REMOVAL BY**
                   Plaintiffs,               **DEFENDANTS WELLS FARGO BANK,**
13                                           **N.A., PURSUANT TO 28 U.S.C. § 1332**
            v.
14                                           **[DIVERSITY JURISDICTION]**
     WELLS FARGO BANK, N.A., FAY
15   SERVICING, LLC and DOES 1 through 50,
     inclusive,
16
                   Defendants.
17

18

19

20   **TO PRO SE PLAINTIFFS, ALL OTHER PARTIES AND THEIR COUNSEL OF**

21   **RECORD, THE CLERK OF THE ABOVE-ENTITLED COURT AND THE**

22   **HONORABLE UNITED STATES DISTRICT JUDGE, AS ASSIGNED:**

23          **PLEASE TAKE NOTICE** that defendant WELLS FARGO BANK, N.A. submits this

24   Notice of Removal based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1441(b) and 1332.

25          The action is hereby removed to this Court from the state court, as more particularly set

26   forth below.

27   ///

28   ///

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

NOTICE OF REMOVAL

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1. **THE STATE COURT ACTION**.

On May 12, 2020, plaintiffs Concetta Manzano S. and George F. Semeil, Jr. ("Plaintiffs") commenced an action in the Superior Court of the State of California for the County of El Dorado, Case No. PC20200223 (the "State Court Action"). A copy of the Complaint filed in the State Court Action is attached hereto as <u>Exhibit A</u>. Attached collectively hereto as <u>Exhibit B</u> are all other documents filed in the State Court Action which are in Wells Fargo Bank, N.A.'s ("Wells Fargo") possession.

2. **DIVERSITY OF CITIZENSHIP**.

   A. **Complete Diversity**.

This Court has jurisdiction of this case under 28 U.S.C. § 1332 because the citizenship of the parties is entirely diverse and the amount in controversy exceeds $75,000.00. Complete diversity of citizenship exists under 28 U.S.C. § 1332(a). Plaintiffs are citizens of California, Wells Fargo is a South Dakota citizen, and defendant Fay Servicing, LLC is a citizen of Delaware.

   i. **Plaintiffs' Citizenship**.

Plaintiffs are California citizens, based on domicile, as they plead ownership and residency of a home located at 4202 Arenzano Way, El Dorado Hills, California 95762 – *i.e.,* the subject property in this action ("Property"). (*See* Compl., <u>Exhibit A</u> thereto, [Deed of Trust].) That residency establishes that Plaintiffs are citizens of the State of California for diversity purposes.

A "notice of removal need only include a plausible allegation" of the plaintiff's citizenship. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014) (applying standard to amount in controversy). Upon information and belief, Plaintiffs reside in California with the intention to remain indefinitely. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *see also*, *Heinz v. Havelock*, 757 F. Supp. 1076, 1079 (C.D. Cal. 1991) (residence and property ownership is a factor in domicile for diversity jurisdiction); *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520

NOTICE OF REMOVAL

1    (10th Cir. 1994) ("Residence alone is not the equivalent of citizenship, but the place of residence

2    is prima facie the domicile.")

3        **ii.**      **Defendant Wells Fargo Bank, N.A. is a Citizen of South Dakota.**

4        Effective December 31, 2007, plaintiff Concetta S. Manzano's original lender (World

5    Savings Bank, FSB) changed its name to Wachovia Mortgage, FSB. (Exhibit C [Nov. 19, 2007

6    OTS Letter].)  Effective November 1, 2009, Wachovia Mortgage, FSB, was converted to Wells

7    Fargo Bank Southwest, N.A., and merged into Wells Fargo Bank, N.A.  (Exhibit D [Nov. 1,

8    2009 OCC Certification Letter].)  The citizenship of the surviving entity from a merger, here

9    Wells Fargo Bank, N.A., is used to determine citizenship. *Meadows v. Bicrodyne Corp.*, 785

10   F.2d 670, 672 (9th Cir. 1986) (using citizenship of surviving entity for diversity)

11       Pursuant to 28 U.S.C. § 1348, defendant Wells Fargo Bank, N.A., as a national banking

12   association, is a citizen of the state where it is "located."  In 2006, the United States Supreme

13   Court, after a thorough examination of the historical versions of § 1348 and the existing case

14   law, held that "a national bank, for § 1348 purposes, is a citizen of the State in which its main

15   office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S.

16   303, 306-307 (2006).

17       Wells Fargo, with its main office located in Sioux Falls, South Dakota, is a citizen of

18   South Dakota.  Attached hereto as Exhibit E are true and correct copies of the FDIC Profile and

19   the Articles of Association for Wells Fargo Bank, National Association, as issued by the Office

20   of the Comptroller of the Currency, Administrator of National Banks, reflecting that Wells Fargo

21   (at Article II, § 1) has its main office in Sioux Falls, South Dakota. *Rouse, et al. v. Wachovia*

22   *Mortgage, FSB*, 747 F.3d 707, 715, at *22 (9th Cir. Mar. 27, 2014) ("under § 1348, a national

23   banking association is a citizen only of the state in which its main office is located."); *Wells*

24   *Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 710 (8th Cir. Sept. 2, 2011); *Mireles v.*

25   *Wells Fargo Bank N.A.*, 845 F. Supp. 2d 1034, 1059-61 (C.D. Cal. 2012); *DeLeon v. Wells*

26   *Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1124 (N.D. Cal. 2010); *Nguyen v. Wells Fargo Bank,*

27   *N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010) ("Wells Fargo is a citizen of South Dakota

28   for purposes of diversity.").

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

1

iii.     **Defendant Fay Servicing, LLC Is A Delaware Citizen.**

2      Defendant Fay Servicing, LLC ("Fay Servicing") is a limited liability company formed in

3   Delaware with its principal place of business in Illinois.  Attached hereto as <u>Exhibit F</u> are true

4   and correct copies of the Illinois Secretary of State LLC File Detail and California Secretary of

5   State Business Entities Detail demonstrating Fay Servicing's Delaware citizenship.

6

iv.     **Summary of Diversity of Citizenship.**

7      As established by the above facts, complete diversity of citizenship exists under 28

8   U.S.C. § 1332(a) as Plaintiffs are California citizens, Wells Fargo is a South Dakota citizen, and

9   Fay Servicing is a Delaware citizen.

10   **3.     AMOUNT IN CONTROVERSY.**

11      "In actions seeking declaratory or injunctive relief, it is well established that the amount

12   in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart*, 281

13   F.3d 837, 840 (9th Cir. 2002) (internal citations omitted); *Rivas v. Wells Fargo Bank, N.A.*, 2016

14   U.S. Dist. LEXIS 170994, at **7-12 (E.D. Cal., Dec. 9, 2016).  The Ninth Circuit has concluded

15   that the amount in controversy requirement is met where "the whole purpose of [the] action is to

16   foreclose the Bank from selling [the property] in the manner contemplated," and the market

17   value and the outstanding interest on the property exceeds the jurisdictional limit.  *Garfinkle v.*

18   *Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973).

19      Similarly, courts have concluded that the amount in controversy requirement is met

20   where either the loan amount or the market value of the property exceeds $75,000.  *Mouri v.*

21   *Bank of N.Y. Mellon*, 2014 U.S. Dist. LEXIS 170365, at **10-12 (C.D. Cal. Dec. 9, 2014)

22   ("More specifically, in actions seeking to enjoin residential foreclosures the amount in

23   controversy may be based on the outstanding amount of the loan or the value of the property.");

24   *Reyes v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 113821, at **12-13 (N.D. Cal. June 29,

25   2010) ("If the primary purpose of a lawsuit is to enjoin a bank from selling or transferring

26   property, then the property is the object of the litigation."); *Garcia v. Citibank, N.A.*, 2010 U.S.

27   Dist. LEXIS 115719, at *9 (E.D. Cal. Apr. 23, 2010) (measuring the amount in controversy

28   according to the original mortgage loan amount in proceedings to enjoin foreclosure); *Gonzales*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

NOTICE OF REMOVAL

1  *v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 152700, *4-*5 (N.D. Cal. Oct. 28, 2014)

2  ("The most recent notice of trustee's sale lists the unpaid amount owed under the deed of trust as

3  just under $700,000. . .  Therefore, the value of the Property easily satisfies the jurisdictional

4  amount. The Court, thus, denies Plaintiff's motion to remand."); *Major v. Wells Fargo Bank,*

5  *N.A.*, 2014 U.S. Dist. LEXIS 114977, at *3-*4 (S.D. Cal. Aug. 15, 2014).  "In actions arising out

6  of the foreclosure of a plaintiff's home, the amount in controversy may be established by the

7  value of the property or by the value of the loan."  *Id*; *accord Mouri, supra,* at **10-12.

8    Further where original loan amounts greatly exceed $75,000, courts routinely find the

9  amount in controversy requirement met without specific reference in the complaint or notice of

10 removal to the market value of the real property that secures the mortgage.  *Rose v. J.P. Morgan*

11 *Chase, N.A.*, 2012 U.S. Dist. LEXIS 35279, at *2-3 (E.D. Cal. 2012) (current property value

12 "likely" exceeded $75,000 because the "property was used to secure a loan of $349,000");

13 *Cabriales v. Aurora Loan Servs.*, 2010 U.S. Dist. LEXIS 24726, at *3 (N.D. Cal. Mar. 2, 2010)

14 (noting that where "the face of Plaintiffs' complaint clearly demonstrates that they seek to enjoin

15 the sale of their house" and the house is likely valued at more than $75,000, the amount in

16 controversy requirement is met); *Uribe v. Wells Fargo Bank, N.A.,* 2016 U.S. Dist. LEXIS

17 12447, at *1 (C.D. Cal. Feb. 1, 2016) (finding the amount in controversy is met in cases where

18 foreclosure proceedings had already been initiated).

19   In February 2006, Plaintiff Concetta S. Manzano obtained a residential home loan in the

20 amount of $495,000 from Wells Fargo, which was memorialized by a promissory note and

21 secured by the Property.  (*See* Compl., <u>Exhibit A</u> thereto, [Deed of Trust].)  Plaintiffs bring this

22 action alleging a litany of causes of action contesting the non-judicial foreclosure seeking both

23 equitable relief and monetary damages – at the minimum $400,000 against Wells Fargo.

24 (Compl., Prayer for Relief, ¶ a.)  Plaintiffs further seek injunctive relief to stop the foreclosure.

25 (<u>Exhibit B</u>, [Plaintiffs' Ex Parte Application for Temporary Restraining Order].)  It must also be

26 noted that the notice of trustee's sale reflects $616,753.72 in arrearage as of its recording on

27 March 11, 2020.  (*See* <u>Exhibit G,</u> [Notice of Trustee's Sale].)  Plaintiffs' claims in this action are

28 well in excess of the $75,000 statutory minimum.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

NOTICE OF REMOVAL

1   **4.    TIMELINESS.**

2          This Notice is timely, pursuant to 28 U.S.C. § 1446(b), because Wells Fargo received

3   notice of this litigation on May 20, 2020.  Defendant Wells Fargo has not appeared in the State

4   Court Action.  *Destfino v. Reiswig, et al.,* 630 F.3d 952, 956 (9th Cir. Cal. 2011) ("we hold that

5   each defendant is entitled to thirty days to exercise his removal rights after being served");

6   *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1429 (9th Cir. 1984).

7   **5.    INTRADISTRICT ASSIGNMENT.**

8          This case is being removed to the Eastern District of California because the existing State

9   Court Action is pending in El Dorado County.

10  **6.    OTHER PERTINENT INFORMATION.**

11         A.     Pursuant to 28 U.S.C. § 1446(a), defendant Wells Fargo files this Notice in the

12  District Court of the United States for the district and division within which the State Court

13  Action is pending.

14         B.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice and its attachments will

15  promptly be served on Plaintiffs in the State Court Action and notice thereof will be filed with the

16  clerk of the El Dorado County Superior Court.

17         **WHEREFORE**, Defendant Wells Fargo hereby removes El Dorado Superior Court Case

18  No. PC20200223 to the United States District Court for the Eastern District of California.

19                                              Respectfully submitted,

20  Dated:  June 19, 2020                       AFRCT LLP

21

22                                              By: _____*/s/ D. Dennis La*_____
                                                     D. Dennis La
23                                              Attorneys for Defendant
                                                WELLS FARGO BANK, N.A.
24

25

26

27

28

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

6

EXHIBIT A

Concetta Manzano S.
George F. Semeil Jr.
4202 Arenzano Way
El Dorado Hills, CA 95762
(916) 941-9016

Petitioners, in pro per

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF EL DORADO**

| | |
|---|---|
| CONCETTA MANZANO S., GEORGE F. SEMEIL JR. ) Plaintiffs, ) ) vs. ) ) WELLS FARGO BANK N.A., ) FAY SERVICING, LLC and DOES ) 1 through 50, inclusive ) ) Defendants. ) ) ) ) ) ) ) ) ) ) ) | **CASE NO:** PC 20200223 **COMPLAINT FOR:** **1. FRAUD** **2. CONSTRUCTIVE FRAUD** **3. NEGLIGENCE** **4. NEGLIGENT MISREPRESENTATION** **5. PROMISSORY ESTOPPEL** **6. WRONGFUL FORECLOSURE** **7. BREACH OF CONTRACT** **8. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING** **9. VIOLATION OF BUSINESS AND PROFESSIONS CODE** **10. BREACH OF FIDUCIARY DUTY** **11. VIOLATIONS OF CIVIL CODES** BY FAX |

Plaintiffs, CONCETTA MANZANO S. and GEORGE F. SEMEIL JR., in pro per, with

this Verified Complaint against the named Defendants and Does 1 through 50 inclusive, alleges

as follows:

## I.       INTRODUCTION

This action is against Defendants Wells Fargo and Fay Servicing for damages and

equitable relief resulting from Wells Fargo's purposeful wrongful acts and omissions as outlined

herein concerning the residential mortgage modification transactions and wrongful foreclosure

process relating to Plaintiffs long-time family residence at 4202 Arenzano Way, El Dorado Hills,

Prepared By:
Sacramento Legal Documents
2377 Gold Meadow Way, Suite 31
Gold River, CA. 95670
(916) 335-3740
SAC 2013-09 EXP. 05/08/20)

CA 95762. The wrongful acts of Defendant complained of herein is forcing Plaintiffs from their home of nearly 16 years. Plaintiffs for their parts did nothing more than diligently respond to Wells Fargo's repeated offers of a home loan modification. By doing so and subjecting themselves to Wells Fargo's home loan modification process. Plaintiffs were inundated with a revolving door of "home preservation specialists," a deluge of misinformation from Wells Fargo, and redundant duplicative requests for information (information which Wells Fargo already had in its files from earlier requests). In return Wells Fargo made countless false promises to Plaintiff, gave repeated false assurances to Plaintiff, and also made untrue statements about Plaintiff to third parties, all in an effort to distract attention from a home loan modification crisis which has become a national epidemic. Wells Fargo sought only to distract from its fraudulent practices and its grossly negligent and reckless disregard for Plaintiffs welfare. In the end, like so many others before them, Plaintiffs are being forced from the home where they have shared holidays, amassed countless memories, grieved for the loss of loved ones, and celebrated once joyous life events, was lost to an avoidable foreclosure.

## II. PARTIES

1. Plaintiffs CONCETTA MANZANO S. and GEORGE F. SEMEIL JR. ("Plaintiffs") are adults and at all relevant times herein resided in Sacramento County. Plaintiffs are not involved in real estate, mortgage or foreclosure types of businesses and does not possess knowledge of the finance, investment or foreclosure processes. Plaintiff occupied her principal dwelling, commonly known as 4202 Arenzano Way, El Dorado Hills, County of El Dorado, California, 95762 (hereinafter, the "Property" or the "Subject Property") and at all times relevant and material hereto, resided at the Subject Property as husband and wife for nearly sixteen (16) years.

2. Defendant WELLS FARGO BANK, N.A. ("Wells Fargo") is and was at all relevant times, a corporation doing business in the County of El Dorado.

3. Defendant FAY SERVICING, LLC ("Fay") is and was at all relevant times, a limited liability company doing business in the County of El Dorado.

4. Defendants DOES I through 50 are involved in the instant case and transactions and are currently unknown to Plaintiff and are therefore sued by such fictitious names.

5. At all times mentioned herein. Defendants, and each of them, knowingly and willfully engaged in the common enterprise of distributing, selling, purchasing, owning and/or servicing the loan that is the subject of this complaint.

6. At all times material hereto, each of the Defendants (both named and Doe Defendants) were the co-conspirator, agent, servant, employer, employee, joint venturer, partner, division, owner, parent, subsidiary, alias, assignee, successor in interest, and/or alter ego of the other remaining Defendants and were at all times acting within the purpose and scope of such conspiracy, agency, servitude, employment, joint venture, division, ownership, parent, subsidiary, assignment, successorship, alter-ego. and/or partnership, and with the authority, permission, consent, approval, and ratification of the remaining Defendants.

7. At all times mentioned herein, each Defendant was acting in concert or participation with the other Defendants or was a joint participant and collaborator in the acts complained of herein.

8. Plaintiffs informed, believes and thereon alleges, that at all times mentioned herein, each Defendant was a corporation or other business entity, form unknown, and has done business and is currently doing business in the County of El Dorado, State of California.

9. All references to Defendant's capacity in recorded documents set forth in this complaint are purported, whether specifically stated or not.

III.   JURISDICTION AND VENUE

10. Jurisdiction and venue are proper in that Plaintiffs at all relevant times resided in the County of El Dorado; Defendant at all relevant times regularly conducted business in the County of El Dorado; the majority of the transactions and events that are the subject matter of

this complaint occurred within the County of El Dorado; and the Subject Property is located in the County of El Dorado.

### IV.   STATEMENT OF FACTS

11.   Plaintiffs have resided at the Subject Property for 16 years.

12.   On or about November 22, 2004, Plaintiff entered into a consumer loan transaction with World Savings Bank to finance the "Subject Property". Plaintiff executed a Promissory Note ("Note") as part of the loan transaction. Plaintiff alleges the World Savings Bank took a security interest in the Subject Property in the form of a Deed of Trust recorded with the El Dorado County Recorder's Office on or about November 22, 2004 ("DOT"). A true and correct copy of the Deed of Trust is attached hereto as Exhibit "A" and incorporated herein by reference.

13.   In October 2006, Wachovia Corporation acquired Golden West Financial Corporation, including World Savings. With the merger, Wachovia gained mortgage lending operations under the World Savings Bank name in 39 states. In 2008, Wells Fargo & Company acquired Wachovia Corporation, including World Savings.

14.   In approximately April 2009, Plaintiffs submitted a request for loan modification to Wells Fargo due to a material change in financial circumstance under the original loan terms.

15.   Defendants interacted with Melina Medina who continually perpetrated a "Bait and Switch" loan modification tactic. Attached are several emails showing one example of this tactic; EXHIBIT B.

16.   After exhaustive efforts to get a loan modification, Melina Medina sent an incorrect modification agreement. She then acknowledged that she was mailing a new one, but that document did not arrive when promised and the dates were void.

17.   Although the Plaintiffs did not receive their promised loan modification, they received a letter requesting pay stubs and other income verification.

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC

EXHIBIT A TO NOTICE OF REMOVAL
Page 9

Attempt after attempt to get the promised loan modification did not materialize the Plaintiffs filed Bankruptcy in a last-ditch attempt to save their home.

19.     From 2011 to present, Wells Fargo and its employees sent Plaintiffs a mountain of paperwork forcing Plaintiffs to submit seventeen (17) requests for Mortgage Assistance (RMA) applications from 2011 up to November of 2016, to no avail.

20.     Even during the bankruptcy proceeding, Defendant continued to file incorrect claims; EXHIBIT "C". Fay Servicing, LLC filed a Transfer of Claim Other Than for Security indicating a claim in the amount of $692,073.66 even though their recent statement showed a balance of $540,177.77.

21.     Further injuring Plaintiff, the bankruptcy attorney they hired did not perform as promised leading to a dismissal of the bankruptcy action and disciplinary action with the California State Bar.

22.     Plaintiffs have paid over $286,000.00 through their Chapter 13 Bankruptcy Court and those payments are not being reflected.

23.     More troubling, on April 20, 2020, an individual claiming to be working on behalf of Fay Servicing and their attorney BARRETT DAFFIN FRAPPIER TREADER & WEISS, LLP was caught on home surveillance camera while demanding entry into our home. The individual proceeded to climb over the perimeter fence of the property and take several photographs. Taken into account the COVID-19 pandemic and the social distancing lock down order by the Governor, and that a debt collector is prohibited by both state and federal law from harassment and intimidating borrowers.

24.     From 2018 through May 6, 2020, Wells Fargo Mortgage continues to deceptively refer the mortgage account to Proxy Fay Servicing as a third party to debt in dispute in violation pursuant to California Rosenthal Fair Debt Collection Practices Act amendment effective on January 1, 2020, as third party to a debt that continues to be in dispute Fay Servicing is

prohibited by state law from pursuing any foreclosure or adverse action against the property.

Fay Servicing have been aware in writing Since June 11, 2018.

## FIRST CAUSE OF ACTION

## FRAUD

25.   This cause of action is brought against Wells Fargo and Fay Servicing.

26.   Fraud occurs when there is (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance, (4) justifiable reliance, and (5) resulting damage. *Oakland Raiders v. Oakland-Alameda Co, Coliseum (2006) 144 Cal.App.4th 1175, 1184.*

27.   Wells Fargo and Fay Servicing engaged in multiple fraudulent acts including but not limited to utilizing a dysfunctional business practice and authorizing employees to use fraudulent documents as the basis for commencing the foreclosure process and ratifying those acts.

28.   Wells Fargo's fraudulent acts included making multiple intentional misrepresentations to Plaintiff to induce her reliance on these statements.

29.   Company associate's misrepresentations and conduct were a substantial factor in Plaintiffs injury of loss of possession and equity in the Subject Property.  Company representatives' misrepresentations, conduct and concealment of the facts, and Plaintiffs reasonably reliance on this representation, denied Plaintiffs the requisite information or knowledge needed to pursue other remedies to prevent the foreclosure action. Given enough time, Plaintiff would have had access to a private money loan that would have avoided foreclosure sale.

30.   The Wells Fargo representative was Melinda Medina, who informed Plaintiffs that she would be involved in the loan modification process. As a result, Plaintiff continued to work with Wells Fargo to obtain a loan modification.

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC

EXHIBIT A TO NOTICE OF REMOVAL
Page 11

31.   With respect to the proposed modification, Wells Fargo falsely represented to Plaintiffs on various occasions they were moving forward with their loan modification application by submitting a proposed modification, which they believed and which they were certain would enable them to save their home (Subject Property).

32.   Wells Fargo was actively working to divert attention from its intentional mishandling of Plaintiffs file and to prevent Plaintiff from knowing these facts. This is also further example of the extent to which Wells Fargo was concealing information and attempting to defraud Plaintiffs.

33.   Throughout this entire process. Wells Fargo cherry-picked what information to use when and how, always kept Plaintiffs in the dark, and essentially tortured Plaintiffs with the prospect of saving their family's home when presumably this was never attainable. Wells Fargo's representations were made with reckless disregard for the truth, yet Plaintiffs reasonably and materially relied on these representations.

34.   A reasonable person in Plaintiffs shoes would be assured that if Wells Fargo was contacting them multiple times over the months of the proposed modification, then the modification was or would be submitted. Plaintiffs relied on the purpose and position of Wells Fargo Home Preservation Department as it was their purpose to assist them in order to retain her home.

35.   Wells Fargo's conduct, misrepresentations and concealment of the facts were a substantial factor in Plaintiffs injury because Wells Fargo did not allow or provide Plaintiffs the requisite information, knowledge or time to pursue other remedies to prevent the foreclosure action.

36.   As a proximate result of Defendant's fraudulent acts, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage

to the Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

37. Plaintiffs have suffered further damages in an amount according to proof at trial.

38. Defendants acted fraudulently, maliciously, and oppressively with a conscious, reckless and willful disregard, and/or with a callous disregard, of the probable detrimental and economic consequences to Plaintiffs and with knowledge that its conduct was substantially certain to vex, annoy, and injure Plaintiffs. Plaintiffs are therefore entitled to punitive damages under California Civil Code § 3294, in amount sufficient to punish or make an example of Defendant.

## SECOND CAUSE OF ACTION

## CONSTRUCTIVE FRAUD

39. All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

40. This cause of action is brought against Wells Fargo and Fay Servicing.

41. Constructive fraud occurs when there is: (1) a breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or (2) any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud Civ. Code, § 1573.

42. Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated—that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud. Estate of Arbuckle (1950) 98 Cal.App.2d 562, 568.

43. Constructive fraud usually arises from a breach of duty where a relation of trust and confidence exists. Darrow v. Robert A. Klein & Co., Inc. (1931) 111 Cal. App. 310,315-316.

Confidential and fiduciary relations are in law, synonymous and may be said to exist whenever trust and confidence is reposed by one person in another. Estate of Cover (1922) 188 Cal. 133, 143. The relationship of a bank depositor is at least quasi-fiduciary. Commercial Cotton Co. v. United California Bank (1985) 163 Cal.App.3d 511,516.

44. Wells Fargo had an extremely unfair advantage over Plaintiffs as it had the sole responsibility and decision-making authority over Plaintiffs loan. Wells Fargo falsely represented to Plaintiff that it would modify their loan in an effort to silence her. But in truth, Wells Fargo misled Plaintiff to her prejudice, resulting in the foreclosure of her home of 16 years (Subject Property) at a trustee sale.

45. As a proximate result of Defendant's fraudulent acts, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit.   Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

46.   Plaintiffs have suffered further damages in an amount according to proof at trial.

47.   Defendants acted fraudulently, maliciously, and oppressively with a conscious, reckless and willful disregard, and/or with a callous disregard, of the probable detrimental and economic consequences to Plaintiffs and with knowledge that its conduct was substantially certain to vex, annoy, and injure Plaintiffs. Plaintiffs are therefore entitled to punitive damages under California Civil Code § 3294, in amount sufficient to punish or make an example of Defendant.

## THIRD CAUSE OF ACTION
## NEGLIGENCE

48.   All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC

EXHIBIT A TO NOTICE OF REMOVAL
Page 14

this cause of action is brought against Wells Fargo and Fay Servicing.

50.     Damages for negligent injury to person or property occurs when: (1) defendant has a legal duty of care toward the plaintiff; (2) defendants breach that duty through negligence or omission; (3) defendants' breach is the proximate cause of injury to the plaintiff; and (4) there is damage or injury to the plaintiff. Pultz v. Holgerson (1986) 184 Cal.App.3d 1110, 1117. In cases involving money lenders, there is a general presumption that there is no duty imposed on a lender in conducting "the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Savings & Loan Assn. (1991) 231 Cal.App.3d 1089, 1096. This general exemption to the existence of a duty does not apply, however, when a mortgage lender undertakes to consider a loan modification. Daniels v. Select Portfolio Servicing, Inc. (2016) 246 Cal.App.4th 1150.

51. Wells Fargo had a duty to act reasonably a) during the processing, handling and underwriting of Plaintiffs loan modification application and the appraisal process; b) in the initiation, solicitation, and representation by Wells Fargo to Plaintiff that Wells Fargo had authority from the lender to modify the loan or provide a loan modification c) and in the submission and processing of the proposed loan modification, Wells Fargo breached this duty by foreclosing on the Subject Property even though it had a completed loan modification application on file for Plaintiffs.

52. Defendant breached its duty to Plaintiff and was negligent in doing each of the following:

        a. violating Califomia Civil Codes in shuffling agents assigned to work with Plaintiff in completing their loan application, thus creating confusion on Plaintiff s file;

        b. violating Califomia Civil Codes in commencing foreclosure action;

        c. failing to timely or properly submit or underwrite Plaintiffs file which could have benefited Plaintiffs loan modification approval;

d. repeatedly changing its requests for documents to Plaintiff or making repeated requests for documents which had already been submitted;

e. failing to use the correct figures for the income amount for Plaintiffs in July 2019;

f. attempting to withhold from Plaintiffs;

g. participating in a wrongful foreclosure sale of Subject Property;

h. additional breaches have been identified and are not limited to the examples provided in this complaint.

53. As a proximate result of Defendant's fraudulent acts, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit.   Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

54. Plaintiffs have suffered further damages in an amount according to proof at trial.

55. It was foreseeable that if Wells Fargo did not act reasonable a) in processing, handling and underwriting of Plaintiffs loan modification application; b) in the initiation, solicitation, and representation by Wells Fargo to Plaintiff that Wells Fargo had authority from the lender to modify the loan or provide a loan modification; and c) in submitting and processing the proposed loan modification Plaintiffs would lose possession of Subject Property. Wells Fargo caused the Subject Property to be foreclosed on even though they had a completed loan modification application on file for Plaintiff.

56. The existence of the duty of the mortgage servicer who undertakes to consider a loan modification to the applicant is considered in light of a balancing test as to "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintifF suffered injury, [4] the closeness of the connection

between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." Nymark v. Heart Fed. Savings & Loan Assn. (1991) 231 Cal.App.3d 1089, 1098.

57. The existence of Wells Fargo's duty under the six factors are met as follows:

(1) The transactions were intended to benefit plaintiffs - All of the transactions regarding Plaintiffs loan modification and the proposed modifications were intended to benefit Plaintiffs. Plaintiffs were in need of a loan modification so they could stay current in their monthly mortgage payments.

(2) Foreseeability of harm to plaintiffs - It was foreseeable that Plaintiff would be harmed if Wells Fargo did not act reasonable in the loan modification process. Defendant had knowledge that the process and transaction would affect Plaintiffs ability to pay their mortgage. Wells Fargo was in control of the documents and process to approve or deny Plaintiffs, and Wells Fargo was servicing the subject loan and has the ability to modify Plaintiffs loan in order to avoid a foreclosure sale.

(3) The degree of certainty is high - Plaintiff has suffered financial injury and damage and more fully described herein. Plaintiff relied upon Wells Fargo and gave up the opportunity cure the arrearage, to refinance the home loan, or have a private party provide funding on the subject property.

(4) The closeness of the connection between Wells Fargo conduct and Plaintiffs injury is directly related. Plaintiff would not have lost her family home of 16 years in a foreclosure sale "but for" Wells Fargo herein described conduct. Plaintiff had the ability to pursue other remedies and did not do so because they reasonably relied upon Wells Fargo.

(c) The Court should prevent future harm by holding Wells Fargo liable for its illegal and negligent conduct as described herein. Unfortunately, this is common conduct by Wells Fargo and its employees that must be stopped for the common good of all borrowers, more specifically Plaintiffs in this case.

## FOURTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

58. All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

59. This cause of action is brought against Wells Fargo and Fay Servicing.

60. The elements of negligent misrepresentation are similar to fraud except for the requirement of scienter; in a claim for negligent misrepresentation. Plaintiff needs not allege Defendant made an intentionally false statement, but simply one as to which it lacked any reasonable ground for believing the statement to be true. See Charnay v. Cobert (2006) 145 Cal.App.4th 170,183.

61. As previously stated. Defendant made multiple negligent misrepresentations to Plaintiff which it had no reasonable grounds for believing were true at the time it made them. Moreover, Defendant knew or should have known of the falsity of the representations due to the nature of the loan modification and foreclosure process.

62. Defendant intended that Plaintiff rely on the misrepresentations; and Plaintiff materially, reasonably, and justifiably relied on such representations by not taking other action to prevent her home from being sold at foreclosure sale.

63. PlaintifF does not have expertise in mortgage or foreclosure procedures or laws. Plaintiff was induced to rely on the representations made by Defendant and the CEO, their expertise in the field, and the verbal and written information given to her by them.

64. Wells Fargo was servicing the loan, had extensive knowledge and experience with the loan modification and foreclosure process, and knew, or should have known that negligent

processing of Plaintiffs loan would result in a foreclosure sale. Wells Fargo's conduct, both verbal and written demonstrates negligence, misrepresentation and concealment of facts from Plaintiff.

65. Plaintiff reasonably and justifiably relied on the representations to her detriment by not taking other actions to prevent her home from being sold at foreclosure sale.

66. Wells Fargo and CEO Timothy Sloan's conduct, misrepresentations, and concealment of facts denied Plaintiff the requisite information or notice of the need to pursue other remedies.

67. As a proximate result of Defendant's fraudulent acts, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit.   Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

68. Plaintiffs have suffered further damages in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION

## PROMISSORY ESTOPPEL

69. All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

70. This cause of action is brought against Wells Fargo and Fay Servicing.

71. Promissory estoppel occurs when there is: (I) a promise that is clear and unambiguous in its terms, (2) reliance by the party to whom the promise is made, (3) the reliance is reasonable and foreseeable, and (4) the party asserting the estoppel is injured by his or her reliance. Aceves .v. U.S. Bank N.A. (2011) 192 Cal.App.4th 218, 225.

72. Promissory estoppel was created by Wells Fargo when it promised Plaintiff

I) Wells Fargo would competently and reliably process Plaintiffs loan modification application to avoid a foreclosure sale;

2) Wells Fargo would not pursue foreclosure activities if Wells Fargo received a completed loan assistance application package;

3) Wells Fargo was submitting a proposed loan modification, for the purpose of working jointly in order to modify Plaintiffs loan.

73. Defendant breached its promises to Plaintiffs when it 1) failed to competently process their loan modification; 2) submitted an incomplete and/or incorrect loan modification package on behalf of Plaintiffs; 3) commenced foreclosure process by filing an NOD and NOS on the Subject Property despite having in its possession a completed loan application from Plaintiffs; and 5) caused the trustee sale of Subject Property to take place on May 26, 2020.

74. Plaintiff detrimentally relied upon Defendant's verbal and written promises and continued to communicate with Wells Fargo and submit documents as requested, and did not take any further actions to stop the foreclosure sale.

75. Plaintiffs reliance was reasonable as any reasonable person in their shoes would be assured that no foreclosure action would commence until Wells Fargo had investigated and competently reviewed all proper information and documentation regarding Plaintiffs file and loan modification.

76. As a proximate result of Defendant's fraudulent acts, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit.  Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

77. As a direct and proximate result, Plaintiffs have suffered, and will continue to suffer, general, special and emotional damages in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION

## WRONGFUL FORECLOSURE VIOLATIONS

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC

EXHIBIT A TO NOTICE OF REMOVAL
Page 20

78. All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

79. This cause of action is brought against Wells Fargo and Fay Servicing.

80. Wrongful foreclosure occurs when: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; [and] (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed. Miles v. Deutsche Bank National Trust Co. (2015) 236Cal.App.4th 394,408.

81. Defendant engaged in wrongful foreclosure when it willfully and fraudulently failed to comply with California Civil Code sections 2924.11, 2923.7, 2924.17. Defendant's fraudulent conduct invalidates the foreclosure sale scheduled for May 26, 2020, as a matter of law.

82. Further, Defendant's fraudulent conduct included broken promises, intentional misrepresentation to Plaintiffs, and false and misleading information to Plaintiff regarding the status of her loan modification, thereby causing Plaintiffs home to be wrongfully foreclosed on.

83. Defendant's continued intentional misrepresentations regarding the status of Plaintiffs loan modification were in bad faith, and Plaintiff relied upon Defendant to her detriment. Specifically, Plaintiff did not seek other means by which to preserve ownership of their home. As a result. Defendant should be estopped from benefitting from its continued statutory violations and conduct.

84. Defendant failed to make a good-faith effort to carry out the loan modification process despite repeated representations, assurances, and offers otherwise, and misrepresented and misled Plaintiff as to the status of the loan modification process on multiple occasions as more fully described herein.

85. Plaintiff is informed and believes and thereupon alleges that Defendant made false and malicious statements regarding Plaintiffs, which statements themselves were detrimental to Plaintiffs preserving their home.

86. As a proximate result of Defendant's unlawful conduct, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit.   Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

87. Plaintiffs have suffered further damages in an amount according to proof at trial.

88. Defendant acted fraudulently, maliciously, and oppressively with a conscious, reckless and willful disregard, and/or with a callous disregard, of the probable detrimental and economic consequences to Plaintiff and with knowledge that its conduct was substantially certain to vex, annoy, and injure Plaintiffs.  Plaintiff is therefore entitled to punitive damages under California Civil Code § 3294, in amount sufficient to punish or make an example of Defendant.

## SEVENTH CAUSE OF ACTION

## BREACH OF CONTRACT

89. All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

90. This cause of action is brought against Wells Fargo and Fay Servicing.

91. Breach Of contract occurs when there is 1) a contract between the parties, 2) Plaintiff did everything that was substantially required of her under the contract or was excused for any nonperformance, 3) Defendants failed to do what was substantially required of them, and 4) Plaintiff was damaged as a result of the breach. CDF Firefighters v. Maldonado (2008) 158 Cal.App.4th 1226.

92. On July 2017, the parties entered into a contract when Wells Fargo offered Plaintiff the terms of a loan modification and told Plaintiff that it would submit the proposal and

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC                          17

EXHIBIT A TO NOTICE OF REMOVAL
Page 22

would keep her informed. Plaintiff accepted the proposal and communicated her intentions to multiple parties including persons at Wells Fargo such as Melinda Medina.

93. Wells Fargo breached the contract 1) by not providing the required information, 2) by incorrectly calculating the income amounts for Plaintiff and for Plaintiffs husband, 3) by concealing all these facts from Plaintiffs preventing her from correcting Wells Fargo's faulty information, and 4) by misleading Plaintiff as to the status of her new modification.

94. Plaintiff relied upon the existence of Wells Fargo's promise of a new loan modification and thereafter went on what essentially became a wild goose chase responding to a litany of requests and conversations, all leading to the same dead end as before; all this at a time in which Plaintiffs efforts could have been better spent securing alterative forms of financing or correcting Wells Fargo's previous mistakes in order to revive her eligibility for home loan modification.

95. As a proximate result of Defendant's breach, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit.   Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

96. Plaintiffs have suffered further damages in an amount according to proof at trial.

## EIGHTH CAUSE OF ACTION

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

97. All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

98. This cause of action is brought against Wells Fargo and Fay Servicing.

99. The implied covenant of good faith and fair dealing is to ensure compliance with the terms of the contract. Pasadena Live, LLC v. City of Pasadena (2004) 114 Cal.App.4th 1089, 1093-94.

100.   At all relevant times. Plaintiff was in privity of contract with Defendant Wells Fargo and in accordance with the loan modification process, the new proposed modification agreement, and promises made by Wells Fargo and its agents. Defendant had an ongoing duty of good faith and fair dealing between the parties.

101.   At all times relevant in this case, there existed an implied covenant of good faith and fair dealing requiring Defendant to safeguard, protect, or otherwise care for the assets and rights of Plaintiff.  Said covenant prohibited Defendant from activities interfering with or contrary to the rights of Plaintiffs.

102.   Defendant breached that duty by its purposeful mishandling of Plaintiffs loan modification application including but not limited to agent shuffling, negligently and intentional misrepresenting the facts to Plaintiff, and breaking promises of personal assurance.

103.   By way of example. Wells Fargo continually grossly mishandled and misplaced information submitted to Wells Fargo by Plaintiffs, made false statements on Plaintiffs behalf to third parties, and told Plaintiffs that it was working on a loan modification. Plaintiff reasonably and detrimentally relied upon Defendant's assurances and took no independent action to avoid a foreclosure sale.

104.   By way of further example. Wells Fargo was aware of the mishandling of the loan modification and faulty information given to Plaintiff regarding the modification and proposal to KYHC, but refused to act in good faith and acted negligently and fraudulently by inducing Plaintiffs reliance.

105.   In addition to the other allegations herein. Plaintiff alleges that Defendant breached the covenant by commencing foreclosure proceedings which violated California Civil Code 2924.JJ, 2923.7, 2924.17 on the Subject Property lawfully belonging to them.

106.   As a proximate result of Defendant's unlawful conduct, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5)

1   damage to their credit. Plaintiff continues to suffer hardship, emotional pain, humiliation and

2   distress as a result of the foreclosure actions.

3       107.    Plaintiffs have suffered further damages in an amount according to proof

4   at trial.

5                          **NINTH CAUSE OF ACTION**

6            **VIOLATION OF BUSINESS AND PROFESSIONS CODE**

7       108.    All other allegations set forth in this complaint are hereby re-alleged and

8   incorporated by reference.

9       109.    This cause of action is brought against Wells Fargo and Fay Servicing.

10      110.    The unlawful acts and practices of Defendant alleged herein constitute

11  unlawful or unfair business practices within the meaning of California Business and Professions

12  Code § J 7200, et seq. which prohibits acts of unfair competition, which means and includes any

13  "fraudulent business act or practice" and conduct which is "likely to deceive" and is "fraudulent"

14

15  within the meaning of Section J 7200.

16      111.    Specifically, Defendant violated, California Civil Code 2924.11, 2923.7,

17  2924.17. Wells Fargo deceived and intentionally misled Plaintiff to their detriment by

18  representing to them it was processing their loan modification in good faith, when it was not.

19  Defendant's wrongful and negligent misconduct demonstrates a likely patten that would mislead

20  the general public in their efforts to obtain a loan modification and regarding foreclosure status.

21      112.    Defendant's false and misleading advertising also falls within the meaning

22  of Business and Professions Code Section 17200 and presents a continuing threat to members of

23  the general public and other consumers who will be defrauded into having their property

24  improperly sold at foreclosure. Plaintiff and other members of the general public have no other

25  adequate remedy of law.

26

27

28

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing. LLC                EXHIBIT A TO NOTICE OF REMOVAL
                                                                                                        Page 25

26

113. Plaintiff alleges that by engaging in the above described acts and/or practices, Defendant has violated several California laws and regulations and said predicate acts are therefore per .se violations of California Business c& Professions Code section 17200, el seq.

114. Plaintiffs alleges that Defendant's misconduct, as alleged herein, gave and have given Defendant an unfair competitive advantage over its competitors. The scheme implemented by Defendant was designed to defraud California consumers, in this case Plaintiffs, and to enrich Defendant.

115. The foregoing acts and practices by Defendant were the proximate cause of substantial harm to California consumers and specifically to Plaintiffs. The harm to Plaintiff and to members of the general public outweighs the utility of Defendant's policy and practices. Consequently, Wells Fargo's policy and practices constitute an unlawful business act or practice within the meaning of Business and Professions Code Section 17200. Further, the foregoing conduct threatens an incipient violation of a consumer law, or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

116. As a proximate result of Defendant's wrongful conduct, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit.  Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

117. Plaintiffs have suffered further damages in an amount according to proof at trial.

### TENTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

118. All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

119. This cause of action is brought against Wells Fargo and Fay Servicing.

At all times relevant, Wells Fargo created, accepted and acted in a fiduciary relationship of great trust and acted for, and was the servicer of the Subject Property for the benefit of Plaintiffs, as defined herein and more specifically in the Negligence cause of action addressing the duty owed to borrower in a loan modification. As such. Wells Fargo had a duty to competently process Plaintiffs loan modification once it had undertaken the task.

121.    214. Wells Fargo further placed itself in a position of trust by virtue of the expertise represented by and through its employees and Wells Fargo CEO, as more fully defined herein.

122.    Defendant breached its fiduciary duty owed to Plaintiffs as it has acted and continues to act for its own benefit and to the detriment of Plaintiff.

123.    Among other things. Wells Fargo represented it was processing Plaintiffs loan modification but acted without due care to the best interests of Plaintiff or for the protection of her rights.

124.    As a direct and proximate result of the breach of the fiduciary duties, Plaintiff has suffered economic damages and loss of funds and payment of fees improperly incurred in an amount to be proved at trial.

125.    As a proximate result of Defendant's unlawful acts, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit.   Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

126.    As a direct and proximate result, Plaintiff has suffered, and will continue to suffer, general, special and emotional damages in an amount according to proof at trial.

**SEVENTH CAUE OF ACTION**

**VIOLATIONS OF CIVIL CODES**

**VIOLATIONS OF CIVIL CODE SECTION 2924.11**

127.    All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

128.    This cause of action is brought against Wells Fargo and Fay Servicing.

129.    California Civil Code § 2924.11 (a) provides "[i]f a borrower submits a complete application for a foreclosure prevention alterative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alterative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative." (Civil Code if 2924.11 (a)

130.    An application is deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Civil Code § 2924.11 (f)

131.    California Civil Code § 2924. JJ (b) provides "[following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying with specificity the reasons for the denial and shall include a statement that the borrower may obtain additional documentation supporting the denial decision upon written request to the mortgage servicer." Civil Code §2924.11 (b)

132.    Wells Fargo violated Civil Code § 2924. JJ (a) that required the consideration a Plaintiffs pending loan application before foreclosure action was taken.

133.    Plaintiff had submitted all requested documents and received no notification that any documents were missing - her application was complete.

134.    Despite having this complete loan modification application in their possession and control Wells Fargo commenced foreclosure proceedings and caused a Notice of Default to be recorded on the Subject Property. Wells Fargo never processed Plaintiffs loan

application as described in further detail below. When Wells Fargo commenced foreclosure proceedings, this constituted dual tracking.

135.     Wells Fargo violated Civil Code § 2924.JJ (b) which requires a mortgage servicer to identify with specificity in writing the reasons for the denial. Since Wells Fargo never processed Plaintiffs loan application and/or obtained needed documents relating to such application, it follows that Wells Fargo did not provide Plaintiff a written notice identifying with specificity the reasons for denial of her application. In fact. By the end of 2016, Wells Fargo was grossly mishandling Plaintiffs loan modification file by failing to keep track of the multiple documents submitted by Plaintiff and by providing inaccurate information.

136.     Plaintiff had by now demonstrated herself ready, willing, and able at a moment's notice to submit any supplemental documents as might be needed or was requested by Wells Fargo; a fact which would have been well known to her SPOC, particularly if Wells Fargo did not deploy an egregious practice of constantly revolving her Home Preservation Specialist (SPOC). Plaintiff had submitted all requested documents to Wells Fargo and had no further communication from them that additional documents were needed.

137.     Wells Fargo cannot circumvent its obligations under Civil Code section 2924.11 by creating a moving target with respect to what constitutes a complete application, by requesting the same documents over and over again, or delaying in order to consider the documents lapsed or expired due to time sensitivity. Additionally, Wells Fargo cannot employ a process of an ever-revolving Home Preservation Specialist (SPOC) which creates chaos with no one seeming to agree on the missing documents, results in them mishandling Plaintiffs file and inadequately informing Plaintiff of the status of her loan modification request. Wells Fargo was obligated under Civil Code Section 2924.11 to acknowledge Plaintiff s completed loan application before commencing foreclosure action, and failed to do so.

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC

EXHIBIT A TO NOTICE OF REMOVAL
Page 29

138. The gross negligence and fraudulent conduct of Defendant calls into question the validity and completeness of other loan modification applications submitted by Plaintiff, at the behest of Wells Fargo, in or about July 2009.

139. Defendant's violation of Civil Code Section 2924.11 renders its Notice of Default ("NOD") void, as a matter of law. Without a valid NOD, Defendant's Notice of Sale, was also void, as a matter of law.

140. As a proximate result of Defendant's violation of Civil Code Section 2924.11, As a proximate result of Defendant's fraudulent acts, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit. Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

141. Plaintiffs have suffered further damages in an amount according to proof at trial.

142. PlaintifF is entitled to recover treble damages as Plaintiff alleges Defendant's unlawful conduct was intentional or reckless, or resulted from willful misconduct.

## VIOLATION OF CALIFORNIA CIVIL CODE 2923.7

143. All other allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

144. This cause of action is brought against Wells Fargo and Fay Servicing.

145. California Civil Code 2923.7 states: "(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Civil Code 2923.7(a) Civil Code 2923.7 further states that the single point of contact will communicate the process to the borrower, coordinate receipt of all

documents needed; and timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alterative. Cv. Code 2923.7(b) (I)-{5)

146. California Civil Code 2923.7(c) states: "The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current."

147. Wells Fargo violated Civil Code 2923.7 subsection (c) by shuffling the SPOCs responsible for communicating with Plaintiff as many four (4) times in one month. Moreover, Wells Fargo changed the single point of contact ("SPOC") many times.

148. As a result of the SPOC shuffling, Plaintiffs were required to resubmit numerous documents that had been previously submitted to various SPOCs. As such, the proper documentation was not considered when evaluating Plaintiffs request for loan modification and was improperly cancelled or denied.

149. California Civil Code 2923.7(e) states: "The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." Wells Fargo's violation of this statute is evidenced in the fact that Plaintiff s complete loan modification application was not properly or timely processed as no knowledgeable team or personnel was provided to oversee or manage her file.

150. Wells Fargo violated California Civil Code 2923.7(e) by shuffling the SPOCs and denying Plaintiff the knowledgeable personnel or a team to oversee or process her file. Wells Fargo also violated the statute by failing to have access to current information and personnel sufficient to timely, accurately, and adequately inform Plaintiff of the current status of her foreclosure prevention alternatives.

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC

EXHIBIT A TO NOTICE OF REMOVAL
Page 31

151.  These events were not isolated to a one-time occurrence on Plaintiff's file. In fact, she experienced many occurrences of requests and re-requests of lost or misplaced documents and of failed communications throughout 2016 and 2017.

152.  Well Fargo's process cannot be seen to have reasonably complied with the statues. The revolving SPOCs and resulting gross mishandling of Plaintiff's file by early 2017, caused Plaintiffs file to balloon to over 600 pages. This fact is made more egregious in that Wells Fargo knew by December of 2016, that Plaintiff had complained to the Consumer Financial Protection Bureau (CFPB) that the revolving door of Home Preservation Specialist (SPOCs) was severely impacting her ability to work with Wells Fargo and to complete her application.

153.  Wells Fargo violated C/V/7 Code 2925.7(b)(5)(e) which states "[t]he mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alteratives to foreclosure process."

154.  In this case. Wells Fargo input the incorrect DTI percentage and incorrect income amounts for Plaintiffs loan modification, preventing a properly and efficient evaluation of the modification. Updated information Plaintiff provided was not used, presumably due to the SPOC shuffling between multiple people, even when Plaintiff received confirmation of Wells Fargo's receipt of these documents. Wells Fargo failed to ensure that the SPOC was knowledgeable about the borrower's situation.

155.  Wells Fargo's ongoing conduct was not a one-time occurrence, but part of a company-wide business practice and indicative of the standard of care shown to Plaintiffs throughout this entire process.

156.  As a result of the multiple SPOCs failure to monitor the loan modification documents. Plaintiff's loan modification application was never properly evaluated. The revolving door of Home Preservation Specialist (SPOCs) was integral to Wells Fargo's ushering Plaintiff through a process that led only to guaranteed failure and the loss of her family home.

157.     As a proximate result of Defendant's violation of Civil Code Section 2923.7, Plaintiffs stand to incur substantial damages which include 1) loss of Subject Property, 2) loss of ownership rights under the agreement, 3) fees and costs in litigation, 4) eviction from their home of 16 years, 5) damage to their credit.   Plaintiff continues to suffer hardship, emotional pain, humiliation and distress as a result of the foreclosure actions.

158.     Plaintiffs have suffered further damages in an amount according to proof at trial.

159.     Plaintiff is entitled to recover treble damages as Plaintiff alleges Defendant's unlawful conduct was intentional or reckless, or resulted from willful misconduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgement against Defendants as follows:

a. For compensatory damages in an amount of $400,000.00 against Wells Fargo Bank and $286,000.00 against Fay Servicing.

b. For special damages in an amount to be determined by proof at trial;

c. For general damages in an amount to be determined by proof at trial;

d. For punitive damages;

e. For attorney's fees and costs of this action pursuant to Cal. Civ. Code § 2924.12 et seq.;

f. For statutory and treble damages pursuant to Cal. Civ. Code § 2924.12 et seq.;

g. For any prejudgment or other interest according to law; and

h. For such other relief as the Court deems just and proper.

Respectfully submitted,

DATED: 05/08/2020

CONCETTA MANZANO S.

DATED: 05/08/2020

GEORGE F. SEMEIL JR.

EXHIBIT A TO NOTICE OF REMOVAL
Page 33

1

2                          **VERIFICATION TO COMPLAINT**

3          We, CONCETTA MANZANO S. and GEORGE F. SEMEIL JR., attest that we have read

4    the attached Verified Complaint for Damages and hereby attest to the truth of all matters asserted

5    therein except for those alleged on information and belief we declare under penalty of perjury,

6    under the laws of the United States of America and the laws of the State of California that the

7    foregoing is true and correct to the best of my personal knowledge.

8

9    DATED: 05/08/2020                          _Concetta Manzano_
10                                               CONCETTA MANZANO S.

11   DATED: 05/08/2020                          _____
12                                               GEORGE F. SEMEIL JR.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC                    29

# EXHIBIT "A"

20422705

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

||||| (barcode)

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2004-0095851-00**
Acct 6-PLACER TITLE CO
Monday, NOV 22, 2004 14:30:00
Ttl Pd    $57.00       Nbr-0000657429
                                JLB/C1/1-17

WHEN RECORDED MAIL TO:
WORLD SAVINGS
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER:   0026149005

NOTE AMOUNT:   $422,000.00

FOR RECORDER'S USE ONLY

### DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND
AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES
AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE
RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF
TRUST IS    $527,500.00 WHICH IS  125% OF THE ORIGINAL PRINCIPAL
NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
      (A)  Security Instrument. This Deed of Trust, which is dated  NOVEMBER 16,
2004  will be called the "Security Instrument"

      (B)  Borrower. CONCETTA S. MANZANO, A MARRIED WOMAN

sometimes will be called "Borrower" and sometimes simply "I" or "me."

      (C)  Lender. WORLD SAVINGS BANK, FSB, * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * ITS SUCCESSORS AND/OR
ASSIGNEES, will be called "Lender." Lender is  A FEDERAL SAVINGS BANK * * * * *
* * * * *  which is organized and exists under the laws of the United States. Lender's
address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA  94612.

||||| (barcode) * 003 *

LENDER'S USE ONLY

SDOO1A (03.22.02/4-02) A01A
DEFERRED INTEREST

Page 1
DEED OF TRUST-ADJUSTABLE

CA

095851

0026149005

(D)   Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $422,000.00 * " ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in monthly payments and to pay the debt in full by DECEMBER 15, 2034.

(E)   Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)   Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)   Person. Any person, organization, governmental authority or other party will be called "Person."

(H)   Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION * * * * * * * is the "Trustee."

II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY
I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   DESCRIPTION OF THE PROPERTY
I give Trustee rights in the Property described below:

(i)   The property which is located at 4202 ARENZANO WAY, EL DORADO HILLS, CA 95762. * * * * * * * * * * * * * * * * * * * * The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

0026149005

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY
I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.


COVENANTS


I promise and I agree with Lender as follows:

1.   BORROWER'S PROMISE TO PAY
I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.   PAYMENTS FOR TAXES AND INSURANCE
(A)   Borrower's Obligations
I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (03.22.02/4-02) A01D                 DEED OF TRUST-ADJUSTABLE                 CA
Page 3

0026149005

(B)   Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

EXHIBIT A TO NOTICE OF REMOVAL
Page 39

0095851

0026149005

3.   APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4.   BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.   BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered

EXHIBIT A TO NOTICE OF REMOVAL
Page 40

0026149005

by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

0026149005

6.   BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.   LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.   LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.   AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if

SD001G (12.72.02/4-02) A01H
REV. (03.01.03/1-02)

DEED OF TRUST-ADJUSTABLE
Page 7

CA

095691

0026149005

only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
      (A)   Borrower's Obligations
            Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

            Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

      (B)   Lender's Rights
            Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
            Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

            Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

            Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made

SD000TH (31.22.02/4-02) AOII                    DEED OF TRUST-ADJUSTABLE                    CA
REV. (03.01.03/1-02)                                    Page 8

0026149005

in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.  MAXIMUM LOAN CHARGES**
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.  LEGISLATION AFFECTING LENDER'S RIGHTS**
If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.  NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 4202 ARENZANO WAY, EL DORADO HILLS, CA  95762. * * * * * * * * * * * * * * * * * * * * * * * * *
A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.  GOVERNING LAW; SEVERABILITY**
This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.  BORROWER'S COPY**
I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.  LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**
If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B), enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the

0026149005

tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS
      An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

19.   CLERICAL ERRORS
      In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

20.   LOST, STOLEN OR MUTILATED DOCUMENTS
      If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

21.   WAIVER OF STATUTE OF LIMITATIONS
      I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

22.   CAPTIONS
      The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

23.   MODIFICATION
      This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

SD0013 (03.22.02/4-02) A01X          DEED OF TRUST-ADJUSTABLE                    CA
REV. (11.15.02/5-02)                 Page 10

0026149005

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

0026149005

**25.   FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)     Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)     the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.   SUBSTITUTION OF TRUSTEE**
I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

0026149005

28.     RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY
        It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

        If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable law.

        Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

        If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

        The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

        Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

29.     RECONVEYANCE
        Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

30.     STATEMENT OF OBLIGATION
        Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (01.22.02/4-02) A01N                    DEED OF TRUST-ADJUSTABLE                         CA
REV. (11.14.03/2-02)                                      Page 13

095851

0026149005

31.   ( X ) QUICK QUALIFYING LOAN PROGRAM
    I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

    If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

32.   ( X ) OWNER OCCUPANCY
    Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that   (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

    If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.


      ( X ) VALUE INDICATES THAT THE PARAGRAPH APPLIES.




                    THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

0026149005

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_Concetta S. Manzano_ _____ (Seal)
CONCETTA S. MANZANO

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL   NOTARY ACKNOWLEDGEMENT

EXHIBIT A TO NOTICE OF REMOVAL
Page 50

09585

STATE OF CALIFORNIA
COUNTY OF *Sacramento*

On *19 November 2004* before me, *L Bencivengo*
personally appeared *Concetta S Manzano*

( ) personally known to me – OR – (X) proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*(signature)*

L. BENCIVENGO
Comm. # 1352193
NOTARY PUBLIC - CALIFORNIA
Sacramento County
My Comm. Expires May 2, 2006

(This area for official notarial seal)

DESCRIPTION OF ATTACHED DOCUMENT

*Deed of Trust*

DESCRIPTION OF DOCUMENT (OPTIONAL)

---

STATE OF CALIFORNIA
COUNTY OF _____

On _____, before me, _____

perso

**ILLEGIBLE NOTARY DECLARATION**
I certify under penalty that the notary seal on the document
To which this statement is attached reads as follows:
Name of Notary L. Bencivengo
Date commission expires May 2, 2006
Notary identification number  1352193
(For notaries commissioned after 1-1-1992)
Manufacturer/Vendor identification number  VSI1
(For notaries commissioned after 1-1-1992)
Place of execution of Declaration Placerville
Dated  11/22/04
Signed Placer Title Co. By: *Sheri M Lee*

ence to be the person(s) whose name(s)
within instrument and acknowledged to
auted the same in his/her/their authorized
y his/her/their signature(s) on the
, or the entity upon behalf of which the
d the instrument.

official seal.

(This area for official notarial seal)

DESCRIPTION OF ATTACHED DOCUMENT

DESCRIPTION OF DOCUMENT (OPTIONAL)

095851

Order No.   204-22705

EXHIBIT "A"
LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF EL
DORADO, UNINCORPORATED AREA, AND IS DESCRIBED AS FOLLOWS:

LOT 9, AS SHOWN ON THAT CERTAIN MAP ENTITLED, "SERRANO VILLAGE E1 - UNIT 1",
FILED IN THE OFFICE OF THE COUNTY RECORDER OF EL DORADO COUNTY, STATE OF
CALIFORNIA, ON MARCH 8, 2002, IN MAP BOOK I, AT PAGE 129.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, INERT GASES,
MINERALS AND METALS, LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID
LAND AND REAL PROPERTY, WHETHER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED, BUT
WITHOUT, HOWEVER, ANY RIGHT TO USE THE SURFACE OF SUCH LAND AND REAL PROPERTY
OR ANY OTHER PORTION THEREOF, ABOVE A DEPTH OF 500 FEET FROM THE SURFACE OF
SUCH LAND AND REAL PROPERTY FOR ANY PURPOSE WHATSOEVER, AS EXCEPTED AND
RESERVED IN THE DEEDS FROM THE EL DORADO HILLS INVESTORS, LTD., , A CALIFORNIA
LIMITED PARTNERSHIP, RECORDED OCTOBER 23, 1989 IN BOOK 3227 OF OFFICIAL
RECORDS, AT PAGES 279 AND 303.

ASSESSOR'S PARCEL NUMBER
114-470-09-100

11/22/2004, 20040095851

Recording Requested By
North American Title Company

Order No. 91028009
Escrow No. 54903-91028009-LLB

AND WHEN RECORDED MAIL TO:

Name    Ms. Concetta S. Manzano

Street   4202 Arenzano Way
Address
City &   El Dorado Hills, CA 95762
State

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2004-0095850-00**
Acct 6-PLACER TITLE CO
Monday, NOV 22, 2004 14:30:00
Ttl Pd  $10.00    Nbr-0000657428
JLB/C1/1-2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## INTERSPOUSAL TRANSFER GRANT DEED
A.P.N. 114-470-09-100
(Excluded from reappraisal under California Constitution Article 13A Section 1 et seq.)

This is an Interspousal Transfer and not a change in ownership under Section 63 of the Revenue and Taxation Code and Grantor(s) has(have) checked the applicable exclusion from reappraisal: **PCOS FILED** Q 11911

(  )  A transfer to a trustee for the beneficial use of a spouse, or the surviving spouse of a deceased transferor, or by a trustee of such a trust to the spouse of the trustor;

(  )  A transfer to a former spouse, in connection with a property settlement agreement or decree of dissolution of a marriage or legal separation;

( X )  A creation, transfer, or termination, solely between spouses, of any co-owner's interest; or

(  )  The distribution of a legal entity's property to a spouse or former spouse in exchange for the interest of such spouse in the legal entity in connection with a property settlement agreement or a decree of dissolution of a marriage or legal separation.

( X )  Check when creating separate property interest in grantee spouse: It is the express intent of the grantor, being the spouse of the grantee, to convey all right, title and interest of the grantor, community or otherwise, in and to the herein described property to the grantee as his/her sole and separate property.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

George Francis Seweil, Jr. husband of the herein Grantee

hereby GRANT(s) to Concetta S. Manzano, ~~wife of the herein Grantor~~ a married woman, as her sole and separate property
the following described real property in the Unincorporated Area, County of El Dorado, State of California:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT " A" AND MADE A PART HEREOF

Dated   November 16, 2004

STATE OF CALIFORNIA,
                                          )SS.
COUNTY OF Sacramento        )
On 19 November 2004        before me,
L Bencivengo, personally appeared
George Francis Seweil Jr

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Bencivengo_

*George Francis Seweil, Jr.*

L. BENCIVENGO
Comm. #1352193
NOTARY PUBLIC-CALIFORNIA
Sacramento County
My Comm. Expires May 2, 2005

(This area for official notarial seal)

MAIL TAX
STATEMENTS TO:    Ms. Concetta S. Manzano, 4202 Arenzano Way, El Dorado Hills, CA 95762
        NAME                    ADDRESS                    CITY, STATE, ZIP

095850

Order No.   204-22705

## EXHIBIT "A"
## LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF EL DORADO, UNINCORPORATED AREA, AND IS DESCRIBED AS FOLLOWS:

LOT 9, AS SHOWN ON THAT CERTAIN MAP ENTITLED, "SERRANO VILLAGE E1 - UNIT 1", FILED IN THE OFFICE OF THE COUNTY RECORDER OF EL DORADO COUNTY, STATE OF CALIFORNIA, ON MARCH 8, 2002, IN MAP BOOK I, AT PAGE 129.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, INERT GASES, MINERALS AND METALS, LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND AND REAL PROPERTY, WHETHER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED, BUT WITHOUT, HOWEVER, ANY RIGHT TO USE THE SURFACE OF SUCH LAND AND REAL PROPERTY OR ANY OTHER PORTION THEREOF, ABOVE A DEPTH OF 500 FEET FROM THE SURFACE OF SUCH LAND AND REAL PROPERTY FOR ANY PURPOSE WHATSOEVER, AS EXCEPTED AND RESERVED IN THE DEEDS FROM THE EL DORADO HILLS INVESTORS, LTD., , A CALIFORNIA LIMITED PARTNERSHIP, RECORDED OCTOBER 23, 1989 IN BOOK 3227 OF OFFICIAL RECORDS, AT PAGES 279 AND 303.

ASSESSOR'S PARCEL NUMBER
114-470-09-100

---

ILLEGIBLE NOTARY DECLARATION

I certify under penalty that the notary seal on the document
To which this statement is attached reads as follows:
Name of Notary L. Bencivengo
Date commission expires May 2, 2006
Notary identification number 1352193
(For notaries commissioned after 1-1-1992
Manufacturer/Vendor identification number VSI1
(For notaries commissioned after 1-1-1992)
Place of execution of Declaration Placerville
Dated 11/22/04
Signed Placer Title Co. By: Sheri Smith

---

11/22/2004 20040095850

# EXHIBIT "B"

**From:** melinda.medina@wachovia.com
**Sent:** Friday, April 03, 2009 1:34 PM
**To:** Jorge
**Cc:** melinda.medina@wachovia.com
**Subject:** RE: Modification/Concetta Manzano

Hi Mr. Serniel,

I wanted to let you know that we deleted the modification agreement we mailed to you and will be void. A new one will be mailed out to you.
We went ahead and set up taxes to be escrowed. Thanks!

Melinda R. Medina
LRC Underwriter
Loss Mitigation
Default Risk
Wachovia Company
San Antonio, TX
1-866-601-4197 ext. 44982
210-624-4982

"Jorge" <jorge767@sbcglobal.net>

04/03/2009 07:03 AM

To <melinda.medina@wachovia.com>

cc

Subject RE: Modification/Concetta Manzano

The extension number your left is not working.  Please call me on cell phone at (916) 296-2522.  If I can't answer please leave a voice mail with your direct number and I will call you back.
Thank you

George S. Jr.
*CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient's and may contain confidential or proprietary information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail and destroy all copies of the original message.*

ForwardSourceID:NT0000AF2A

EXHIBIT A TO NOTICE OF REMOVAL
Page 56

**From:** Jorge [jorge767@sbcglobal.net]
**Sent:** Wednesday, April 08, 2009 7:40 PM
**To:** 'melinda.medina@wachovia.com'
**Subject:** RE: Modification/Concetta Manzano
FYI:
 We have not received the New Modification agreement.

George S. Jr.
*CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient's and may contain confidential or proprietary information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail and destroy all copies of the original message.*

**From:** Jorge [jorge767@sbcglobal.net]
**Sent:** Thursday, April 09, 2009 5:30 PM
**To:** 'melinda.medina@wachovia.com'
**Cc:** 'jennie.gilmer@wachovia.com'
**Subject:** RE: Modification/Concetta Manzano
Ms. Median
We have not received the revised Modification Agreement we discuss on April 3, 2009.

George S. Jr.
*CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient's and may contain confidential or proprietary information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail and destroy all copies of the original message.*

EXHIBIT A TO NOTICE OF REMOVAL
Page 58

**From:** Jorge [jorge767@sbcglobal.net]
**Sent:** Friday, April 10, 2009 6:56 PM
**To:** 'melinda.medina@wachovia.com'
**Cc:** 'jennie.gilmer@wachovia.com'
**Subject:** RE: Modification/Concetta Manzano / Loan # 00419377801

We received a letter today dated April 3, 2009 requesting for Pay stubs and other income verification.

We are not clear by what is happening at Wachovia with our Loan. The last conversation I had with you, you instructed us to wait for a new loan Modification Agreement Documents. We have been waiting now for 7 days and no document has arrived.

George S. Jr.

*CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient's and may contain confidential or proprietary information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail and destroy all copies of the original message.*

**From:** Jorge [jorge767@sbcglobal.net]
**Sent:** Tuesday, April 14, 2009 6:42 PM
**To:** 'mary.h.davis@wachovia.com'
**Cc:** 'jennie.gilmer@wachovia.com'
**Subject:** Re: Loan # 0041937780/Concetta Manzano
Dear Ms. Medina:

We received the Loan Modification Agreement dated April 3, 2009 today April 14, 2009 via UPS.
Wachovia Bank stated in this agreement that it must be signed and returned by April 10, 2009.
We are concerned as to why Wachovia did not send this document over night on April 3, 2009, and
now the document is being delivered on April 14, 2009 four days after the requested signature and
return date?

This process appears to us to very questionable, as to why we have been given numerous run-a-
rounds; each attempt we try resolved this matter with Wachovia's Mortgage employees?


George S. Jr.
*CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the*
*intended recipient's and may contain confidential or proprietary information. Any unauthorized review,*
*use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the*
*sender by reply e-mail and destroy all copies of the original message.*

From: Jorge [jorge767@sbcglobal.net]
Sent: Tuesday, April 14, 2009 7:51 PM
To: 'mary.h.davis@wachovia.com'
Cc: 'melinda.medina@wachovia.com'
Subject: Re Loan # 0041937780/Concetta Manzano / UPS Tracking of Loan Modification Doc. Dated April3, 2009:

Here is the UPS Tracking of Loan Modification Doc. Dated April 3, 2009: if this Document was created on April 2, 2009, Then why was          Quantum View    Flex Global View
That document requesting our signature and return to Wachovia by April 10, 2009 arrived at our home address today April 14, 2009?              o                 o

Packages & Freight

Tracking Detail                                                                                                                                              Printer Friendly☐ Help ☐

Your package has been delivered.
Tracking Number:                                1Z 5R9 388 01 9470 960 1
Type:                                            Package
Status:                                          Delivered
                                                 UPS has delivered the shipment.

                                                 Residential deliveries that do not require a signature may be left in a safe place, out of sight and out of weather, at
                                                 the driver's discretion. This could include the front porch, side door, back porch, or garage area. If you have
                                                 instructed the driver to leave the shipment with a neighbor or leasing office, this would be noted on a yellow UPS
                                                 InfoNotice left by the driver.

                                                 Delivered ☐Proof of Delivery☐
Delivered On:                                    04/14/2009 11:58 A.M.
Location:                                        FRONT DOOR
Delivered To:                                    EL DORADO HILLS, CA. US
Shipped/Billed On:                               04/13/2009
Service:                                         NEXT DAY AIR

To view additional tracking information, please log in. Into My UPS.

Package Progress

| Location | Date | Local Time | Description |
|---|---|---|---|
| SACRAMENTO, CA, US | 04/14/2009 | 11:58 A.M. | DELIVERY |
| | 04/14/2009 | 7:14 A.M. | OUT FOR DELIVERY |
| | 04/14/2009 | 6:50 A.M. | ARRIVAL SCAN |
| MATHER, CA, US | 04/14/2009 | 6:32 A.M. | DEPARTURE SCAN |
| | 04/14/2009 | 4:04 A.M. | ARRIVAL SCAN |
| ROCKFORD, IL, US | 04/14/2009 | 2:27 A.M. | DEPARTURE SCAN |
| | 04/14/2009 | 12:02 A.M. | ARRIVAL SCAN |
| SAN ANTONIO, TX, US | 04/13/2009 | 9:39 P.M. | DEPARTURE SCAN |
| | 04/13/2009 | 8:49 P.M. | ARRIVAL SCAN |
| LEON VALLEY, TX, US | 04/13/2009 | 8:21 P.M. | DEPARTURE SCAN |
| | 04/13/2009 | 7:50 P.M. | ORIGIN SCAN |
| | 04/13/2009 | 5:30 P.M. | PICKUP SCAN |
| US | 04/13/2009 | 10:18 A.M. | BILLING INFORMATION RECEIVED |

Tracking results provided by UPS: 04/14/2009 10:45 P.M. ET

George S. Jr.
CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient's and may contain confidential or proprietary
information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail and
destroy all copies of the original message.

**From:** Jorge [jorge767@sbcglobal.net]
**Sent:** Wednesday, April 15, 2009 6:14 AM
**To:** 'melinda.medina@wachovia.com'
**Subject:** RE: Re Loan # 0041937780/Concetta Manzano / UPS Tracking of Loan Modification Doc. Dated April3, 2009:

We would rather have a document that shows the correct return date..

George S. Jr.
*CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient's and may contain confidential or proprietary information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail and destroy all copies of the original message.*

July 23, 2018

Via US Certified Mail and Facsimile

Fay Servicing, LLC
901 S 2Nd Street, Suite 201
Springfield, Il 62704 IL 60680-9441
Fax (630) 282-7660
Fax (630) 282-7539

Re: NOTICE to Cease and Decease: Act.NO: 0484026349/Fay Servicing Act: NO: 0000188019
Concetta Manzano S.

Dear Billing Department:

Fay Servicing was notified via the attached letter with supporting exhibits dated June 11, 2018
Pursuant to The Fair Debt Collection Practices Act (FDCPA) and other statutes Validation of
debts, to cease and decease all contact with us via Telephone US Mail, Fax or any other form of
electronic communication., and to cease any and all collection activities to above mortgage
account number due to debt in dispute with Wells Fargo Mortgage.

Fay Servicing has apparently ignore our request and continue to send us unsolicited monthly
billing statements that is deceptive and at best fraudulent.

Final notice is hereby given to Fay Servicing LLC to cease and decease this form of unlawful
harassment as a third party to a debt in dispute to include monthly billing statements, telephone
calls, e-mails Fax, and other form of electronic communications.

Any unsolicited contact by Fay Servicing LLC, or unauthorized inquiries or reports to our credit
bureau files will be consider fraudulent and complaints will be filed with all appreciate State and
Federal agencies against Fay Servicing.

Sincerely

*Concetta Manzano   07/23/2018*

Concetta S Manzano

*George F Semeil Jr.   7/23/2018*

George F Semeil Jr.
4202 Arenzano way
El Dorado Hills, CA. 95762
(916) 941-9016

Cc: Chapter 13 Attorney Eric Schwab

1

June 11, 2018

Via US Certified Mail and Facsimile

Fay Servicing, LLC
Attn: Mr. Lemus
Account Manager
440 South La Salle #2000
P.O. Box 809441
Chicago, Il 60680-9441
Fax (630) 282-760
Fax (630) 282-7539

Wells Fargo Mortgage
Attn: Mr.Corbly McNay
Manager.
Executive Resolution Specialist
MAC X2302-02J
1 Home Campus
Des Moines. IA 50328
Fax (866) -972-0924
Fac (866) 278-1179
Fax (866) 918-6703

Re: Debt Validation Request Notice: Wells Fargo Mortrtage Act.NO: 0484026349/Fay Servicing
Act: NO: 0000188019 Concetta Manzano S.

Dear Mr. Lemus & Mr. McNay:

This letter serve as response to Fay Servicing May 25, 2018 letter demanding that all payments
for the above Wells Fargo Mortgage account payment be submitted Fay Servicing (FS).

Fay Servicing is hereby notified Pursuant to The Fair Debt Collection Practices Act (FDCPA)
Validation of debts. we respectfully requesting FS to provide validation of this debt in the back
drop of a long standing dispute which existed with Wells Fargo Mortgage supported by the
following attached exhibits.

Exhibit "A"
May 7, 2018 letter to Wells Fargo Mortgage followed by a telephone call to Mr. Mcnay on May
21, 2018 are the most current written and verbal communication in addition to numerous letters
previously sent to Wells Fargo Mortgage Executive Resolution in which the bank has ignored the
fraud perpetrated on us.

1

2

Exhibit "B"

Attached is our payment schedule to the Chapter 13 Bankruptcy court Trustee via TFS Bill pay for a total   Amount paid $165,656.97 to date which Wells Fargo Mortgage have refused to properly credit the account to show the correct balance due on the mortgage.

More Importantly Wells Fargo Mortgage continuation to kick the can down the road by selling or referring our mortgage account will under protection of Chapter 13 Bankruptcy to debt collector Fay Servicing while a major unresolved dispute still exist, constitutes deceptive statements, and unfair to us as consumers, in violation of the Federal Trade Commission (FTC) Act.

It should be also noted, Fay Servicing is a third party to a debt in dispute, and therefore lacks proper jurisdiction pursuant to 5 U.S.C. §§ 1692-1692p and California Rosenthal Fair Debt Collection Practices Act. Cal Civ Code §§1788 to 1788.33, 1812 to 1812.072.

Wells Fargo Mortgage continuation to prolong resolution of this long standing matter warrants us proceeding with litigation in a California Superior Court Pursuant to the 2018 California Homeowners Bill of Rights.

Therefore, considering the forgoing, Fay Servicing is hereby notify to cease and decease all contact with us via Telephone US Mail, Fax or any other form of electronic communication., and to cease  any and all collection activities to this mortgage account. Any unauthorized inquiries or reports to our credit bureau files will be consider fraudulent and complaints will be filed with all appreciate State and Federal agencies against Fay Servicing.

Sincerely

Concatta Manzano

Concatta S Manzano

George Nemeth Jr.        6/11/2018

4202 Arenzano way

El Dorado Hills, CA. 95762

(916) 941-9016

Cc: Chapter 13 Attorney Eric Schwab

2

# EXHIBIT "C"

B 2100A (Form 2100A) (12/15)

# UNITED STATES BANKRUPTCY COURT

Eastern District Of California

In re: CONCETTA SAVLINO MANZANO                    Case No. 17-23289

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2016-1

Name of Transferee

Wells Fargo Bank, N.A.

Name of Transferor

Name and Address where notices to transferee should be sent:
Fay Servicing, LLC
3000 Kellway Dr. Ste 150
Carrollton, TX 75006
Phone: (312)291-3781
Last Four Digits of Acct #: 8019

Court Claim # (if known): 1-2
Amount of Claim: $692073.66
Date Claim Filed: 04/26/2018

Phone: 800-274-7025
Last Four Digits of Acct. #: 6349

Name and Address where transferee payments should be sent (if different from above):
Fay Servicing, LLC
3000 Kellway Dr. Ste 150
Carrollton, TX 75006
Phone: (312)291-3781
Last Four Digits of Acct #: 8019

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: /s/ Ashish Rawat
     AIS Portfolio Services, LP as agent                    Date 06/22/2018
        Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

# FAY SERVICING

P.O. Box 619063
Dallas, TX 75261-9063

**Mortgage Statement**
Statement Date 06/11/2018

If you have questions or concerns about your statement, please contact us at 1-800-495-7166 between the hours of 8 a.m. - 9 p.m. CT Monday through Thursday, 8:30 a.m. - 5 p.m. CT Friday, and 10 a.m. - 4 p.m. CT Saturday.

www.fayservicing.com

4-775-07942-0049741-010-1-000-100-000-000

CONCETTA S MANZANO
4202 ARENZANO WAY
EL DORADO HILLS CA 95762-5433

| Account Number | 188019 |
|---|---|
| Payment Due Date | 07/01/2018 |
| **Amount Due** | **$12,283.77** |

Property Address:

4202 ARENZANO WAY
EL DORADO HILLS CA 95762

## Bankruptcy Message

**Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.**

If your bankruptcy plan requires you to make the post-petition payments directly to the Trustee, you should send the payment to the Trustee and not to us.

If you want to stop receiving a mortgage statement, you must submit a written request to the following address:

Fay Servicing, LLC
901 S. 2nd Street, Suite 201
Springfield, IL 62704

If you later want to resume receiving a mortgage statement, you must submit a written request to the same address. Please be aware that we must comply with any order entered by the court in your bankruptcy case that requires us to cease providing a mortgage statement.

## Explanation of Amount Due (post petition payment)

| | |
|---|---|
| Principal | $451.91 |
| Interest | $2,888.74 |
| Escrow | $773.94 |
| **Monthly post petition payment** | **$4,094.59** |
| Overdue post-petition payments | $8,189.18 |
| Total post-petition Fees or charges | $0.00 |
| Suspense (Unapplied Funds) | ($0.00) |
| **Total Amount Due** | **$12,283.77** |

The Amount Due includes only post-petition payments and does not include other payments that may be due under the terms of your bankruptcy plan. Please note this amount may change once a proof of claim has been filed and your bankruptcy plan has been confirmed.

Any advances, fees or costs listed in the account activity history will not be collected or included in any amount owed until a Notice of Post-petition Mortgage Fees, Expenses and Charges is filed with the Bankruptcy Court. Once the notice is filed, any advances, fees and costs due will be listed in a subsequent monthly statement.

## Account Information

| | |
|---|---|
| Outstanding Principal | ($540,177.77) |
| Current Interest Rate | 6.50000% |
| Escrow Balance | ($31,853.50) |

## Past Payments Breakdown

| | Since Last Statement Paid | Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Suspense | $0.00 | $8,191.03 |
| Fees and Charges | $0.00 | $0.00 |
| **Total** | **$0.00** | **$8,191.03** |

Fees listed may include interest payments received from the Trustee per the terms of a Plan or local rules applicable in the bankruptcy case. To obtain detail regarding fees received by the Trustee, please contact your attorney or Trustee.

## Important Messages

The information disclosed in this mortgage statement may not include payments you have made to the Trustee; therefore, the information may not be consistent with the Trustee's records.

Please contact your attorney or the Trustee with questions regarding the application of payments.

## Summary of Amounts Past Due Before Bankruptcy Filing (Pre-Petition Arrearage)

| | |
|---|---|
| Paid Last Month | $0.00 |
| Total Paid During Bankruptcy | $0.00 |
| Current Balance | $116,363.03 |

This box shows amounts that were past due when you filed for bankruptcy. Please note that this amount may change once a proof of claim has been filed and your bankruptcy plan has been confirmed.

FAY

If your bankruptcy plan requires you

**WELLS FARGO MORTGAGE**

Return Mail Operations
PO Box 14411
Des Moines IA 50306-3411

| | |
|---|---|
| Statement date | 05/16/18 |
| Loan number | 0484026349 |
| Payment date | 06/01/18 |
| **Total payment amount** | |
| Minimum payment | **$8,479.40** |

If you are in an active bankruptcy case or have received a discharge under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only. If you want to stop receiving statements, please write to us at the correspondence address listed on the statement.

DCSF2TDTVK 054844DCSF2T00000071064708

CONCETTA S MANZANO
4202 ARENZANO WAY
EL DORADO HILLS, CA 95762-5433

Property address

4202 ARENZANO WAY
EL DORADO HILLS, CA 95762

**Customer Service**

Online
wellsfargo.com

Telephone*
1-800-274-7025

Correspondence
PO Box 10335
Des Moines IA 50306

Fax
1-866-278-1179

Payments
PO Box 14507
Des Moines IA 50306

Hours of operation
Mon - Fri 7 a.m. - 7 p.m. CT

*We accept telecommunications relay service calls.

### Explanation of payment amount
(Post-petition payment)

| Payment options | Minimum payment |
|---|---|
| Principal | $449.48 |
| Interest | $2,871.17 |
| Escrow | $919.05 |
| Current payment [2] 06/01/18 | $4,239.70 |
| Unpaid payment 05/01/18 | $4,239.70 |
| Total payment amount [2] | $8,479.40 |
| Making this payment your principal balance will | Decrease |

[2] The information in this section reflects post-petition payment amounts under the bankruptcy plan.

### Account summary

| | |
|---|---|
| Unpaid principal balance (This is not a payoff amount.) | $540,177.77 |
| Unpaid advance balance | $2,272.59 |
| Unpaid late charge(s) | $608.50 |
| Unapplied funds balance | $8,191.03 |
| Escrow balance | -$31,853.50 |
| Unpaid deferred interest balance* | $36,139.74 |

*The Unpaid deferred interest balance is also included in the Unpaid principal balance. See reverse side for more information about deferred interest.

### Account information

The interest rate on this account is 6.500%.

The maturity date on your loan is 05/49 (month/year).

### Past payments breakdown

| | Since last statement | Year-to-date |
|---|---|---|
| Total received* | $0.00 | $30,764.56 |
| Principal | $3.11 | $28.84 |
| Interest** | $2,475.83 | $23,408.40 |
| Escrow | $765.59 | $7,327.32 |
| Taxes disbursed (YTD) | | $4,236.62 |
| Insurance disbursed (YTD) | | $2,070.74 |

*This may include the Unapplied funds balance from the Account summary section.
**This information should not be used for tax purposes. If you have tax related questions, please consult your tax advisor.

### Activity since your last statement

| Date | Description | Total | Principal | Interest | Escrow | Other |
|---|---|---|---|---|---|---|
| 05/07 | Payment | | $3.11 | $2,475.83 | $765.59 | Unapplied -$3,244.53 |

### Informational messages

If the bankruptcy plan requires you to make post-petition payments directly to the trustee do not send payments to us. Instead, send the payments to the trustee.

This statement may not show recent payments sent to the trustee that the trustee has not yet forwarded to us. Please contact your attorney or the trustee if you have questions.

Continued on next page

Please specify additional funds

CONCETTA S MANZANO
4202 ARENZANO WAY
EL DORADO HILLS, CA 95762

Loan number     0484026349

Payment date   06/01/18

Payment x pmt amt   A   $

EXHIBIT B

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WELLS FARGO BANK N.A., FAY SERVICING, LLC and DOES 1 through 50, inclusive

EL DORADO CO. SUPERIOR CT.

FILED   MAY 1 2 2020

BY   **S. Howe**
    Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CONCETTA MANZANO S., GEORGE F. SEMEIL JR.

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Cameron Park Branch
3321 Cameron Park Drive
Cameron Park CA 95682

CASE NUMBER
*(Número del Caso):*
PC20200223

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Concetta Manzano S., George F. Semeil Jr.    916-941-9016
4202 Arenzano Way El Dorado Hills CA 95762

DATE:   MAY 1 2 2020    Tania G. Ugrin-Capobianco Clerk, by    **S. Howe**    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* WELLS FARGO BANK N.A.

under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☑ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

Concetta Manzano S.
George F. Semeil, Jr.

Name of Applicant
4202 Arenzano Way
El Dorado Hills, CA 95762

Address of Applicant

(916) 941-9016

Telephone Number

EL DORADO CO. SUPERIOR CT.

FILED  MAY 12 2020

BY ____ Shaw U
        Deputy

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF EL DORADO

In re:                           )
CONCETTA MANZANO S.              )
GEORGE F. SEMEIL, JR.           )        Case No. __ P C  2 0 2 0 0 2 2 3
                                 )
Petitioner,                      )
                                 )        EX PARTE APPLICATION AND
                                 )        DECLARATION FOR ORDERS
WELLS FARGO BANK N.A.,          )        AND NOTICE
FAY SERVICING, LLC              )
                                 )
Respondent.                      )
_____)

I, ___CONCETTA MANZANO S., GEORGE F. SEMEIL JR.___, am making an Ex Parte Application to the court, and I do hereby declare and say as follows:

1. I am submitting this declaration in accordance with Code of Civil Procedure section 2009 and 2015.5; California Rules of Court, Rule 5.118(f); and the decisions in Reifler vs Superior Court (1974) Cal.App.3d 479 and Marriage of Stevenot (1984) 154 Cal.App.3d 1051. I hereby affirm that I have personal knowledge of the facts stated herein, and if called as a witness, I would testify competently thereto.

### THE ORDERS I AM REQUESTING IN THIS EX PARTE APPLICATION

2. I am requesting that the court make the following order(s):
   (a) __Stay of Foreclosure scheduled for May 26, 2020__.
   (b) _____.
   (c) _____.

Ex Parte Application and Declaration for Orders and Notice

Local Form F-27
Optional Use Form
Eff. 01/13/2014
Page 1 of 4

PDF processed with CutePDF evaluation edition www.CutePDF.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Concetta Manzano S.<br>George F. Semeil, Jr.<br>4202 Arenzano Way El Dorado Hills CA 95762<br>TELEPHONE NO: 916-941-9016   FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiffs, in pro per | Prepared By:<br>Sacramento Legal Documents<br>2377 Gold Meadow Way, Suite 31<br>Gold River, CA. 95670<br>(916) 335-3740<br>SAC 2013-09 EXP. 05/08/20 | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS: Same as above
CITY AND ZIP CODE: Cameron Park 95682
BRANCH NAME: Cameron Park Branch

EL DORADO CO. SUPERIOR CT.

FILED   MAY 08 2020

BY   *S Howe*
            Deputy

BY FAX

CASE NAME:
Manzano vs. Wells Fargo, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: PC 2 0 2 0 0 2 2 3 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: Assigned to<br>Judge Dylan Sullivan |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☑ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive

4. Number of causes of action *(specify):* 11

5. This case ☐ is ☑ is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: 5/7/2020

Concetta Manzano S., George F. Semeil Jr.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

Concetta Manzano S.
George F. Semeil Jr.
4202 Arenzano Way
El Dorado Hills, CA 95762
(916) 941-9016

Petitioners, in pro per

EL DORADO CO. SUPERIOR CT.

FILED   MAY 08 2020

BY ___SHawU___
Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF EL DORADO

| | |
|---|---|
| CONCETTA MANZANO S., GEORGE F. SEMEIL JR.<br>　　　Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK N.A., FAY SERVICING, LLC and DOES 1 through 50, inclusive<br><br>　　　Defendants. | CASE NO:　P C　2 0 2 0 0 2 2 3<br><br>COMPLAINT FOR:<br>1. FRAUD<br>2. CONSTRUCTIVE FRAUD<br>3. NEGLIGENCE<br>4. NEGLIGENT MISREPRESENTATION<br>5. PROMISSORY ESTOPPEL<br>6. WRONGFUL FORECLOSURE<br>7. BREACH OF CONTRACT<br>8. BREACH OF COVENANT OF GOOD<br>　　FAITH AND FAIR DEALING<br>9. VIOLATION OF BUSINESS AND<br>　　PROFESSIONS CODE<br>10. BREACH OF FIDUCIARY DUTY<br>11. VIOLATIONS OF CIVIL CODES |

BY FAX

*no exhibits attached w fax*

Plaintiffs, CONCETTA MANZANO S. and GEORGE F. SEMEIL JR., in pro per, with

this Verified Complaint against the named Defendants and Does 1 through 50 inclusive, alleges

as follows:

Assigned to
Judge Dylan Sullivan
For all purposes

### I.　　INTRODUCTION

This action is against Defendants Wells Fargo and Fay Servicing for damages and

equitable relief resulting from Wells Fargo's purposeful wrongful acts and omissions as outlined

herein concerning the residential mortgage modification transactions and wrongful foreclosure

process relating to Plaintiffs long-time family residence at 4202 Arenzano Way, El Dorado Hills.

Prepared by:<br>Sacramento Legal Documents<br>2377 Gold Meadow Way, Suite 31<br>Gold River, CA. 95670<br>(916) 335-3740<br>SAC 2013-09 EXP. 05/08/20

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC

1

COUNTY OF EL DORADO
3321 Cameron Park Drive
Cameron Park, California 95682
(530) 621-5867          Fax (530) 672-2413

CASE NO. PC 20200223

Plaintiff,

CONCETTA MANZANO S

vs.

**EL DORADO CO. SUPERIOR CT.**

Defendant.

WELLS FARGO BANK

**FILED MAY 11 2020**

NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE    BY **S. Howe** Deputy
(Local Rule 7.12.05 and .09)

NOTICE IS HEREBY GIVEN that a CASE MANAGEMENT CONFERENCE in the above entitled case is set for  1:30 on 10/05/20, in Dept. 10. 3321 Cameron Park Drive, Cameron Park, California.

A Case Management Statement must be filed and served not less than 15 days before the Conference.

If a party is demanding a jury trial, pursuant to Civil Code of Procedure section 631(b), a non-refundable jury fee of $150.00 must be deposited with the court on or before the initial Case Management Conference date in this action. Failure to timely deposit the funds will result in a waiver of a jury trial.

At the CASE MANAGEMENT CONFERENCE you will be assigned a Dispute Reso-lution Conference Date, a Mandatory Settlement Conference Date, and a Trial Date. In lieu of a Dispute Resolution Conference, the parties may elect mediation, binding arbitration, or judicial arbitration.

In addition, the court will make pre-trial orders.

The Court will require full compliance of El Dorado County Local Rules, in particular, the rules governing Trial Court Case Management (rule 7.12.00, et seq.). For additional information regarding the Trial Court Case Management Program visit our website at: www.eldoradocourt.org

You must be prepared to discuss all matters and dates which are the subjects of the Case Management Conference. Telephonic court appear-ances are provided through the Court. To sign up to appear by telephone please go to the court's website at http://www.eldoradocourt.org/onlineservices/vcourt.html at least five (5) days prior to the scheduled conference.

CMC1                                                        Rev 05/20/13

CLERK'S CERTIFICATE OF SERVICE

I declare under penalty of perjury that I am over the age of 18 and not a party to the above action; that a copy of NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE was placed for mailing through either the United States Post Office or Inter-Departmental mail on the parties at the address shown herein.
Executed on 05/11/20, in Cameron Park, California.

Delivered to:

CONCETTA MANZANO S                   GEORGE F SEMEIL JR
4202 ARENZANO WAY                    4202 ARENZANO WAY
EL DORADO HILLS CA 95762             EL DORADO HILLS CA 95762


                    Tania Ugrin-Capobianco, Court Executive Officer

              By: _____ **S. Howe** _____
                                  Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA,
# COUNTY OF EL DORADO

## NOTICE TO LITIGANTS

### CIVIL TRIAL DELAY REDUCTION AND ALTERNATIVE DISPUTE RESOLUTION
### REQUIRED PROCEDURES AND TIME LINES

All general civil cases are included in the El Dorado Court's Civil Trial Delay Reduction Program. Local Rules for the El Dorado Superior Court require that you comply with certain procedures and meet certain time lines for these cases. Please see Local Rule 7.12.00 et seq.

Plaintiffs and Cross-Complainant must serve the following documents with the Complaint or Cross-Complaint on all other parties: 1) A copy of this Notice to Litigants; 2) A copy of the Notice of Case Management Conference; and 3) A blank Case Management Statement. This service must be accomplished <u>and</u> proof of service must be filed within 60 days of the filing of the Complaint or Cross-complaint.

A Case Management Conference (CMC) will be held within 120 days of filing of the Complaint. The date and time are indicated on the Notice of Case Management Conference. You must file a completed Case Management Statement at least 15 days prior to the Conference.

At the CMC, the court will assign a Dispute Resolution Conference date, a Mandatory Settlement and Readiness Conference date and a trial date. The court may also assign an Issues Conference date. In lieu of a Dispute Resolution Conference, all parties may elect mediation, private arbitration or judicial arbitration. You may obtain a stipulation and order to participate in alternative dispute resolution and a list of the attorneys on the Dispute Resolution Conference, arbitration or mediation panels from the court's website or the clerk's office.

Dispute Resolution Conferences will be conducted by one attorney temporary judge. You may obtain a list of the attorneys on the panel on the Court's website at www.eldoradocourt.org.

Dispute Resolution Conferences are conducted as early Mandatory Settlement Conferences pursuant to CRC Rule 3.1380 which requires that trial counsel, parties and persons with full authority to settle personally attend, unless excused by the court, and that no later than 5 court days before the conference, each party file and serve on each other party a Settlement Conference Statement with a good faith settlement proposal. The Dispute Resolution conference is conducted by a volunteer settlement attorney.

It is important to review Local Rule 7.12.00 et seq. and El Dorado Superior Court's ADR program with your client. It will increase the possibility of your client's case being resolved at an early, less expensive stage.

### DISPUTE RESOLUTION CONFERENCES
### REQUIRED PROCEDURES AND TIME LINES

The Court has initiated an Alternative Dispute Resolution (ADR) Program which applies to all civil cases which are subject to these rules; provided, however, that on the joint request of the parties or on its own motion, the Court may order that the program apply to any civil case.

Unless the parties agree to another form of ADR, they will be ordered to participate in a Dispute Resolution Conference (DRC). The DRC will be conducted by a volunteer attorney temporary judge. The DRC will be conducted as a Mandatory Settlement Conference pursuant to California Rules of Court, rule 3.1380, and the parties and counsel are directed to comply with the terms thereof.

Trial Reduction Notice to Litigants

Within 7 to 10 days after the Case Management Conference, the court will notify the parties of the DRC temporary judge assigned to the case. It is the responsibility of the plaintiff to contact the temporary judge and arrange for a time and place for the DRC convenient to them and all parties.

At least 10 court days prior to the DRC, each party is to submit to the temporary judge and the other parties a Dispute Resolution Conference Statement which meets the requirements of California Rules of Court, rule 3.1380, and any special requirements set forth below.

Prior to the DRC, the parties are to exchange documents and records pertinent to settlement and shall provide copies of these to the DRC temporary judge.

With leave of court and in lieu of participation in a DRC, the parties may stipulate to private arbitration (binding or non-binding), judicial arbitration, or mediation. The parties may select the neutral from the Court's panel or a private neutral of their choice. The parties will be responsible for any fees associated with arbitration, judicial arbitration or mediation. The Court's panel of neutrals may be obtained from the court's website.

### MANDATORY SETTLEMENT AND READINESS CONFERENCE
### REQUIRED PROCEDURES AND TIME LINES

A **MANDATORY SETTLEMENT AND READINESS CONFERENCE** (MSRC) will be held approximately three to four weeks prior to trial. See CRC Rule 3.1380 and Local Rule 7.12.10.

The MSRC will be conducted as a **MANDATORY SETTLEMENT CONFERENCE** pursuant to CRC Rule 3.1380, which provides:

1. That trial counsel, parties and persons with full authority to settle the case shall personally attend the conference, unless excused by the court for good cause shown; and

2. That no later than five court days before the conference, each party shall submit to the court and serve on each party, a Mandatory Settlement Conference Statement containing a good faith settlement demand and an itemization of economic and non-economic damages by each plaintiff and a good faith offer of settlement by each defendant. The Mandatory Settlement Conference Statement shall set forth and discuss in detail all facts and law pertinent to the issues of liability and damages involved in the case as to that party.

The MSRC will also be conducted as a **TRIAL READINESS CONFERENCE** at which all matters that need to be resolved prior to trial, including matters set at in Rule 7.12.09, paragraphs D and E, shall be before the court. In their MSCR Statements Counsel are to address the following:

1. **Witnesses.** A list identifying all lay and expert witnesses the party intends to call at trial;
2. **Exhibits.** A list identifying all exhibits the party intends to offer at trial.
3. **Jury Instructions.** A jury instructions checklist indicating the BAJI numbers of requested Instructions;
4. **Photographs and Reports.** Each party shall attach to the MSRC Statement copies of relevant documents which may assist the Court in settlement including photographs, diagrams, reports, bills, and contracts.

No later than three days prior to the MSRC, the parties are to file and serve Motions in Limine.

Local Form C-13
Mandatory Form
Rev.01/14/2015

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                          FAX NO.*(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|

*(Check one):* ☐ **UNLIMITED CASE**          ☐ **LIMITED CASE**
(Amount demanded                     (Amount demanded is $25,000
exceeds $25,000)                     or less)

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                          Time:                    Dept.:          Div.:              Room:

Address of court *(if different from the address above):*

☐   Notice of Intent to Appear by Telephone, by *(name):*

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.   The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a.   Type of case in   ☐ complaint   ☐ cross-complaint      *(Describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

CEB | Essential
ceb.com | Forms

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720-3.730
www.courts.ca.gov

CM-110

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

CASE NUMBER:

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. E-mail address:
f. Fax number:
g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1) For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.
b. **Referral to judicial arbitration or civil action mediation (if available).**
(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c.   Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

CEB | Essential Forms
ceb.com

**CASE MANAGEMENT STATEMENT**

EXHIBIT B TO NOTICE OF REMOVAL
Page 80

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

CASE NUMBER:

11. Insurance
   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
   b. Reservation of rights: ☐ Yes   ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*


12. Jurisdiction
   Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
   ☐ Bankruptcy   ☐ Other *(specify):*
   Status:

13. Related cases, consolidation, and coordination
   a. ☐ There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
      ☐ Additional cases are described in Attachment 13a.
   b. ☐ A motion to   ☐ consolidate   ☐ coordinate   will be filed by *(name party):*

14. Bifurcation
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

15. Other motions
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

16. Discovery
   a. ☐ The party or parties have completed all discovery.
   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

   | Party | Description | Date |
   | --- | --- | --- |
   |  |  |  |

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CEB® Essential ⓒ Forms
ceb.com

CASE MANAGEMENT STATEMENT

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Economic litigation**
    a.  ☐  This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.
    b.  ☐  This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**
    ☐  The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**
    a.  ☐  The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b.  After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

 

_____      ▶   _____
        (TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY)

_____      ▶   _____
        (TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY)
                                               ☐  Additional signatures are attached.

CEB | Essential
ceb.com | Forms

1  Concetta Manzano S.
   George F. Semeil Jr.
2  4202 Arenzano Way
   El Dorado Hills, CA 95762
3  (916) 941-9016

4  Petitioners, in pro per

5

6          SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                    COUNTY OF EL DORADO

8

9  CONCETTA MANZANO S.,                )    CASE NO.:   PC 20200223
   GEORGE F. SEMEIL JR.                 )
10                                      )    REPLY TO PRELIMINARY
                                        )    OPPOSITION TO MOTION FOR
11           Plaintiffs,                )    TEMPORARY RESTRAINING
                                        )    ORDER
12 v.                                   )
                                        )
13 WELLS FARGO BANK N.A.,               )
   FAY SERVICING, LLC and DOES          )
14 1 through 50, inclusive             )
                                        )    HEARING DATE:    May 22, 2020
15           Defendants.                )    HEARING TIME:    8:30 a.m.
                                        )    COURTROOM:       9
16                                      )

17       Plaintiffs, CONCETTA MANZANO S. and GEORGE F. SEMEIL, JR., respectfully

18 Reply to Defendant, FAY SERVICING, LLC, Preliminary Opposition to Motion to For

19 Temporary Restraining Order:

20       Plaintiffs are agreeable to Defendants request for continuance **provided any Agreement**

21 **includes a provision that provides for a temporary restraining order or stays any foreclosure**

22

23 **proceeding until further Order of the Court.**

       Plaintiffs agree and understand the amount of documentation and discovery that needs to
24
   be completed, which is why this emergency motion was brought before the Court.
25
       Defendant, FAY SERVICING, LLC, and their representation, BARRETT DAFFIN
26
27 FRAPPIER TREDER & WEISS, LLP has a history of "stall" tactics and disingenuous statements

28 and correspondence:

Prepared By:
Sacramento Legal Documents
2377 Gold Meadow Way, Suite 31
Gold River, CA 95670
(916) 335-3740
SAC 2013-09 EXP. 05/08/20

Concetta Manzano S., George F. Semeil Jr. vs. Wells Fargo Bank N.A., Fay Servicing, LLC          EXHIBIT B TO NOTICE OF REMOVAL
                                                                                                            Page 83

05/19/2020   4:28PM (GMT-05:00)

a.  On November 10, 2018, our bankruptcy attorney, Eric J. Schwab, wrote to Barrett Daffin, et al, advising them that we disputed their proof of claim that was filed in the Bankruptcy Court and requesting an accounting history of our account from 01/01/2009 to present. To date, we have NEVER received this accounting; **EXHIBIT "A"**.

b.  On March 20, 2020, an employee of FAY SERVICING, LLC, Mr. Adam Hansen, contacted us via email and stated he provided us the necessary forms to move forward with Mortgage Assistance that was offered by Fay Servicing on February 20, 2020. However, there was not any attachment to this email. After many unanswered emails and telephone calls, we were still unable to get confirmation that the foreclosure was taken off calendar while we were waiting to receive the promised forms that never arrived (again) to receive mortgage assistance; **EXHIBIT "B"**.

c.  Even after FAY SERVICING offered to work with us to resolve these matters, they would not confirm a stay of the foreclosure proceeding. Based on many consumers history with FAY SERVICING, this is a tactic they use on a regular basis. On June 7, 2017, The Consumer Financial Protection Bureau (CFPB) took action against mortgage servicer Fay Servicing for failing to provide mortgage borrowers with the protections against foreclosure that are required by law. The CFPB ordered Fay Servicing must pay up to $1.15 million to consumers who were subject to these illegal servicing practices. *Consumer Financial Protection Bureau Administrative Proceeding File No. 2017-CFPB-0014;* **EXHIBIT "C"**. Due to the size of the Consent Order, a full and complete copy IS NOT attached, but can be provided to the Court at their request.

d.  Plaintiffs also believe the Defendants are attempting to be disingenuous regarding the representation of BARRETT DAFFIN FRAPPIER TREADER &

## Eric Schwab

November 10, 2018

Darlene C. Vigil
Barrett Daffin, et. al.
20955 Pathfinder Road ste. 300
Diamond Bar, CA 91765

Re: Concetta Manzano
BK No 17-23289
Wells Fargo 0484026349

RESPA Request

Ms. Vigil,

The above noted individual disputes the veracity of the proof of claim filed in this bankruptcy case for the above noted account on the basis of accounting going back several years. Please have your client prepare and submit to this office an account history from 01/01/2009 to the present date so that Ms. Manzano can have a forensic accountant review the account history for accuracy in comparison to the proof of claim in the bankruptcy case.

Thank you,

Eric J. Schwab
Attorney-at-Law
555 University Avenue 130
Sacramento, CA 95825
916-564-9588
eric@nelsonschwab.com

1

# EXHIBIT "B"



RETURN SERVICE ONLY
P.O. BOX 619063
DALLAS, TX 75261-9063

02/20/2020



||||||||||||||||||||||||||||||||||||||||||||||||||||||
5-775-12511-0000210-001-1-000-000-000-000
CONCETTA S MANZANO
4202 ARENZANO WAY
EL DORADO HILLS CA 95762-5433

Loan Number:      0000188019
Property Address: 4202 ARENZANO WAY
                  EL DORADO HILLS CA 95762

Dear Concetta S Manzano:

If you are having difficulty making your mortgage payments, we may be able to assist you. If you need help, you may qualify for the following options, subject to the owner of the loan approval:

- Refinance your loan with us or another lender;
- Modify your loan terms with us; or
- Payment Forbearance, Repayment Plan and/or Deferment Plan, which temporarily gives you more time to make your monthly payment.

If you are not able to keep paying your mortgage, another option may be to find more affordable housing. As an alternative to foreclosure, the following non-retention options may be available to you, subject to owner of the loan approval:

- Sell your property and use the proceeds to pay off your current loan;
- Short Sale of the property, where the owner of the loan may accept less than the amount owed*; or
- Deed-in-Lieu of Foreclosure, whereby you deed the property to the owner of the loan in exchange for forgiveness of all or a portion of the loan*.

*Forgiveness of debt may have federal tax consequences. Consult with a tax professional.

For help exploring your options, the federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at https://www.consumerfinance.gov/find-a-housing-counselor/, the Department of Housing and Urban Development at https://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm, or by calling (800) 569-4287.

**Here's how it works:** We will first determine if you are eligible for any available options based on your situation. **To conduct this evaluation, we need you to submit a complete Loss Mitigation Application consisting of a completed Borrower Assistance Form and all required documentation. The documents required for loss mitigation may vary depending on the owner of your loan. Your Fay Servicing, LLC Account Manager will be able to provide you with the list of documents needed for your loss mitigation review, however, if you are unable to speak with your Fay Servicing, LLC Account Manager, you may submit the applicable documents listed on the Document Checklist. You may obtain the Borrower Assistance Form and Document Checklist at www.fayservicing.com by clicking the link, "Available Assistance Options" or by calling your personal Fay Servicing, LLC Account Manager at (800) 495-7166.

*If you have other types of income, cannot locate required documents, or have questions about the documentation required, please contact us at (800) 495-7166.*

**Certain restrictions may apply if there is a scheduled foreclosure sale date.** The owner of your loan does not offer loss mitigation options to borrowers who submit applications less than the applicable number of days before a scheduled foreclosure sale explained here. Generally, all documents required to complete your loss mitigation application must be received more than thirty seven (37) days before scheduled foreclosure sale in order for you to be eligible for loss mitigation options. Please note, however, that certain states have established additional loss mitigation requirements for properties that are a borrower's principal residence. For such properties located in the state of Washington, all documents required to complete a loss mitigation application must be received at least fifteen (15) days before a scheduled foreclosure sale in order for a borrower to be eligible for loss mitigation options. For such properties located in the state of California, Nevada, Minnesota, or Georgia all documents required to complete a loss mitigation application (substantially complete for Minnesota) must be received at least seven (7) days before a scheduled foreclosure sale in order for a borrower to be eligible for loss mitigation options. If a complete (substantially complete for Minnesota) loss mitigation application is not

Fay Servicing, LLC is a debt collector, and any information you provide to us will be used for that purpose. To the extent your original obligation was discharged, or is subject to an automatic stay under the United States Bankruptcy Code, this is being provided for informational purposes only and does not constitute an attempt to collect a debt or impose personal liability. Our office hours are 8:00 A.M. to 9:00 P.M. Monday through Thursday, 8:00 A.M. to 7:00 P.M. Friday, & 10:00 A.M. to 4:00 P.M. Saturday, Central Standard Time. Call today: 1-800-495-7166. NMLS ID #88244. NC residents: Fay Servicing, LLC, NC Permit Number 112302, 425 S. Financial St., Suite 2000, Chicago, IL 60605-6011.

EXHIBIT B TO NOTICE OF REMOVAL
Page 87

As requested, I have attached the requested form. Please print the form, fill it out completely and email, or fax it back to the fax number on the form.

Thanks!

Sincerely,

**Adam Hansen**
Assistant Account Manager
Fay Servicing, LLC
440 S LaSalle - Chicago, IL
800.495.7166 toll free
31251 (707) 515-0751 direct
630.282.7548 fax
http://www.fayservicing.com



This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee, you should not disseminate, distribute, or copy this email and delete immediately. Fay Servicing is a debt collector, and information you provide to us will be used for that purpose. To the extent you filed a bankruptcy petition and received a discharge of your personal liability, or you are currently in an active bankruptcy case, this is being provided for informational purpose only and does not constitute an attempt to collect a debt or impose personal liability.

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

3

# EXHIBIT "C"

To: Legal Department Wells Fargo    Page 9 of 15        2020-05-19 21:16:06 (GMT)              19165884959 From: Jenny Barei

Case 2:20-cv-01247-TLN-CKD   Document 1   Filed 06/19/20   Page 93 of 114
2017-CFPB-0014    Document 1    Filed 06/07/2017    Page 1 of 51

## UNITED STATES OF AMERICA
## CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING

File No. 2017-CFPB-0014

In the Matter of:

**CONSENT ORDER**

**FAY SERVICING, LLC**

The Consumer Financial Protection Bureau (Bureau) has reviewed the mortgage
servicing practices of Fay Servicing, LLC (Respondent, as defined below), specifically
related to its handling of loss-mitigation applications and its implementation of
foreclosure protections required to be afforded to borrowers engaged in the loss-
mitigation process, and has identified the following law violations. Respondent violated
the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. 2601, *et seq.*, its
implementing regulation, Regulation X, 12 C.F.R. part 1024, and the Consumer
Financial Protection Act of 2010 (CFPA) as follows: Respondent took prohibited
foreclosure actions against certain borrowers, in violation of 12 C.F.R. § 1024.41(f)(2)
and (g); Respondent failed to have policies and procedures reasonably designed to
provide required foreclosure protections in compliance with applicable law, in violation
of 12 C.F.R. § 1024.38(a) and (b)(1)(v); Respondent failed to send or timely send
acknowledgment notices to numerous borrowers, in violation of 12 C.F.R.
§ 1024.41(b)(2)(i)(B); Respondent failed to state in the acknowledgment notices the
additional documents and information needed from borrowers to make their loss-

1

# EXHIBIT "D"

Case 2:20-cv-01247-TLN-CKD Document 1 Filed 06/19/20 Page 95 of 114

Case type: bk **Chapter:** 13 **Asset:** Yes **Vol:** v **Hon.:** Christopher D. Jaime
**Date filed:** 05/15/2017 **Date of last filing:** 05/15/2020 **Plan confirmed:** 07/11/2017
**Debtor dismissed:** 02/03/2020

# Attorneys

**Cassandra J. Richey**
3990 E. Concours Steet, Suite 350
Ontario, CA 91764
6263717000
  *Assigned: 12/20/2019*
  *LEAD ATTORNEY*

representing

**Wilmington Trust, National Association**
*(Creditor)*

**Eric John Schwab**
555 University Avenue, Suite 130
Sacramento, CA 95825
916-564-9588
  *Assigned: 05/15/2017*
  *TERMINATED: 12/20/2019*
  *LEAD ATTORNEY*

representing

**Concetta Savlino Manzano**
4202 Arenzano Way
El Dorado Hills, CA 95762
*(Debtor)*
PRO SE

**Edward A. Treder**
3990 E. Concours Steet, Suite 350
Ontario, CA 91764
6263717000
  *Assigned: 05/25/2017*
  *LEAD ATTORNEY*

representing

**Wells Fargo Bank, N.A.**
Barrett Daffin Frappier Treder & Weiss
4004 Belt Line Rd #100
Addison, TX 75001
*(Creditor)*

**Robert P. Zahradka**
1455 Frazee Road, Suite 820
San Diego, CA 92108
6195013503
  *Assigned: 07/08/2019*
  *LEAD ATTORNEY*

representing

**Wilmington Trust, National Association**
Tiffany & Bosco, P.A.
1455 Frazee Rd #820
San Diego, CA 92108
*(Creditor)*

**Wilmington Trust, National Association**
c/o Fay Servicing, LLC
PO Box 220720
Chicago, IL 60622
*(Creditor)*

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/19/2020 08:49:19 | | | |
| **PACER Login:** | saclegaldocs:5876658:0 | **Client Code:** | |
| **Description:** | Attorney List | **Search Criteria:** | 17-23289 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

05/19/2020  4:28PM (GMT-05:00)

## PROFF OF SERVICE BY FIRSTCLASS MAIL

I, GEORGE F. SEMEIL JR, I am over 18 years of age, a citizen of the United States of America, and resident of El Dorado County where the mailing took place.

My Residence address is 4202 Arenzano way, El Dorado Hills, CA 95762.

On November 22, 2019 I mailed from the El Dorado Hills Post Office in the State of California the following documents:

(1) NOTICE OF OBJECTION TO PROFF OF CLAIM:
(2) DECLARATION OF CONCETTA MANZANO S
(3) STATEMENT OF FACTS
(4) EXHIBITS  (A), (B) (C) & (D) ATTACHED HEREIN:

I served the documents by enclosing them in an envelope, depositing the seal envelope with the United States Postal with postage fully prepaid.

The envelopes were addressed and mailed as follows:

(1) Wayne Blackwelder Clerk
United States District Court
Eastern District of California
501  I Street, Suite 3-200
Sacramento Ca. 95814

(2) Mr. David P. Cusick
Chapter 13 Trustee
80 Blue Ravine Rd. Suite 150
Folsom California 95630

(3) Wells Fargo Mortgage Attorneys
BARRETT DAFFIN FRAPPIER TREADER & WEISS, LLP
Attn: Darlene C. Vigil
20955 Pathfinder Road Suite 300
Diamond Bar, CA 91765

(4)
(5) Fay Servicing
Attn: Bankruptcy Dept.

3000 Kelly Dr. Suite 150
Carrollton Texas 75006

(6) Wells Fargo Mortgage
Attn: Bankruptcy Dept.
3440 Flair Dr. El Monte Ca, 91731

(7) Tiffany & Bosco
Attn: Attorneys Megan E Less SBN: 277805
1544 Frazee Rd, Suite 820
San Diego CA, 92108

I declare under the penalty of perjury under Federal and the State California laws
that the foregoing is true and correct.

Executed on November 22, 2019 at El Dorado Hills, California.


By _____
          GEORGE F SEMEIL Jr.

POS-050/EFS-050

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO.:<br>NAME: Concetta Manzano S., George F. Semeil Jr.<br>FIRM NAME:<br>STREET ADDRESS: 4202 Arenzano Way<br>CITY: El Dorado Hills          STATE: CA    ZIP CODE: 95762<br>TELEPHONE NO.: 916-941-9016      FAX NO.:<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name): Plaintiffs, in pro per | FOR COURT USE ONLY<br><br>Prepared By:<br>Sacramento Legal Documents<br>2377 Gold Meadow Way, Suite 31<br>Gold River, CA. 95670<br>(916) 335-3740<br>SAC 2013-09 EXP. 05/08/20 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS: Same as above
CITY AND ZIP CODE: Cameron Park 95682
BRANCH NAME: Cameron Park Branch

| | |
|---|---|
| PLAINTIFF/PETITIONER: CONCETTA MANZANO S., GEORGE F. SEMEIL JR. | CASE NUMBER:<br>PC20200223 |
| DEFENDANT/RESPONDENT: WELLS FARGO BANK N.A., FAY SERVICING, LLC | JUDICIAL OFFICER:<br>JUDGE DYLAN SULLIVAN |
| PROOF OF ELECTRONIC SERVICE | DEPARTMENT:<br>9 |

1.  I am at least 18 years old.

    a.  My residence or business address is (specify):
        2377 Gold Meadow Way, Suite 30
        Gold River, CA 95670
        (916) 335-3740
    b.  My electronic service address is (specify):
        jenny@saclegaldocs.biz

2.  I electronically served the following documents (exact titles):
    Reply to Preliminary Opposition to Motion for Temporary Restraining Order

    ☐ The documents served are listed in an attachment. (Form POS-050(D)/EFS-050(D) may be used for this purpose.)

3.  I electronically served the documents listed in 2 as follows:
    a.  Name of person served: Lawrence D. Harris, Esq.

        On behalf of (name or names of parties represented, if person served is an attorney):
        FAY SERVICING, LLC
    b.  Electronic service address of person served :
        larryh@bdfgroup.com
    c.  On (date):  05/19/2020

        ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
        (Form POS-050(P)/EFS-050(P) may be used for this purpose.)

Date: 5/19/2020

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Jenny M. Barei
_____
(TYPE OR PRINT NAME OF DECLARANT)                    (SIGNATURE OF DECLARANT)

Page 1 of 1

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>POS-050/EFS-050 [Rev. February 1, 2017] | **PROOF OF ELECTRONIC SERVICE**<br>**(Proof of Service/Electronic Filing and Service)** | Cal. Rules of Court, rule 2.251<br>www.courts.ca.gov |

EXHIBIT B TO NOTICE OF REMOVAL
Page 95

05/19/2020   4:28PM (GMT-05:00)

POS-050/EFS-050

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO.:<br>NAME: **Concetta Manzano S., George F. Semeil Jr.**<br>FIRM NAME:<br>STREET ADDRESS: **4202 Arenzano Way**<br>CITY: **El Dorado Hills**           STATE: **CA**      ZIP CODE: **95762**<br>TELEPHONE NO.: **916-941-9016**          FAX NO.: :<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name): **Plaintiffs, in pro per** | FOR COURT USE ONLY<br><br>**Prepared By:**<br>**Sacramento Legal Documents**<br>2377 Gold Meadow Way, Suite 31<br>Gold River, CA. 95670<br>(916) 335-3740<br>SAC 2013-09 EXP. 05/08/20 |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado<br>STREET ADDRESS: **3321 Cameron Park Drive**<br>MAILING ADDRESS: **Same as above**<br>CITY AND ZIP CODE: **Cameron Park 95682**<br>BRANCH NAME: **Cameron Park Branch** | |
| PLAINTIFF/PETITIONER: **CONCETTA MANZANO S., GEORGE F. SEMEIL JR.** | CASE NUMBER:<br>PC20200223 |
| DEFENDANT/RESPONDENT: **WELLS FARGO BANK N.A., FAY SERVICING, LLC** | JUDICIAL OFFICER:<br>**JUDGE DYLAN SULLIVAN** |
| **PROOF OF ELECTRONIC SERVICE** | DEPARTMENT:<br>9 |

1. I am at least 18 years old.

    a. My residence or business address is *(specify)*:
    **2377 Gold Meadow Way, Suite 30**
    **Gold River, CA 95670**
    **(916) 335-3740**

    b. My electronic service address is *(specify)*:
    **(916) 588-4959**

2. I electronically served the following documents *(exact titles)*:
    **Reply to Preliminary Opposition to Motion for Temporary Restraining Order**

    ☐ The documents served are listed in an attachment. *(Form POS-050(D)/EFS-050(D) may be used for this purpose.)*

3. I electronically served the documents listed in 2 as follows:

    a. Name of person served: **Legal Department**

    On behalf of *(name or names of parties represented, if person served is an attorney)*:
    **Wells Fargo Bank N.A.**

    b. Electronic service address of person served :
    **(866) 358-9873**

    c. On *(date)*: **05/19/2020**

    ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
    *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date: 5/19/2020

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Jenny M. Barei
_____          _____
(TYPE OR PRINT NAME OF DECLARANT)          (SIGNATURE OF DECLARANT)

Page 1 of 1

**PROOF OF ELECTRONIC SERVICE**
**(Proof of Service/Electronic Filing and Service)**

Cal. Rules of Court, rule 2.251
www.courts.ca.gov

EXHIBIT B TO NOTICE OF REMOVAL
Page 96

05/19/2020  4:28PM (GMT-05:00)

EXHIBIT C



**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re:  World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer
Assistant Regional Director

cc:  Robert Burns, FDIC - Atlanta

EXHIBIT C TO NOTICE OF REMOVAL
Page 97

EXHIBIT D



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:   Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
      bank and application to merge the converted bank with and into Wells Fargo Bank,
      National Association, Sioux Falls, South Dakota
      Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

*Stephen A. Lybarger*

Stephen A. Lybarger
Large Bank Licensing Lead Expert

EXHIBIT E

FDIC:Bank Find



# FDIC
**Federal Deposit Insurance Corporation**
Each depositor insured at least $250,000 per insured bank

Advanced Search

Home > Industry Analysis > Bank Data & Statistics > Institution Directory > Bank Find

## Bank Find

Institution Directory Home

**Back to Search Bank Find**

**History of World Savings Bank, Fsb, Sioux Falls, New Jersey (FDIC Cert: 27076)**
**Note: This institution is currently part of Wells Fargo Bank, National Association, Sioux Falls, South Dakota (FDIC Cert: 3511)**

|  | Date | Event |
|---|---|---|
| 1 | 10/8/1987 | Institution established. Original name: Watchung Hills Bank For Savings (27076) |
| 2 | 1/21/1995 | Changed name to **World Savings Bank, F.S.B. (27076).** |
| 3 | 1/21/1995 | Changed primary regulatory agency from Federal Deposit Insurance Corporation to Office Of Thrift Supervision. |
| 4 | 7/24/1996 | Moved bank headquarters from Warren, New Jersey to El Cajon, California. |
| 5 | 8/30/1996 | Moved bank headquarters from El Cajon, California to Oakland, California. |
| 6 | 12/31/2000 | Acquired World Savings And Loan Association, A Federal Savings And Loan Associati (31315) in Oakland, California. |
| 7 | 4/16/2001 | Changed name to **World Savings Bank, Fsb (27076).** |
| 8 | 12/31/2007 | Changed name to **Wachovia Mortgage, Fsb (27076).** |
| 9 | 12/31/2007 | Moved bank headquarters from Oakland, California to North Las Vegas, Nevada. |
| 10 | 11/1/2009 | Changed name to **Wells Fargo Bank Southwest, National Association (27076).** |
| 11 | 11/1/2009 | Changed primary regulatory agency from Office Of Thrift Supervision to Comptroller Of The Currency. |
| 12 | 11/1/2009 | Changed organization type to Commercial Bank. |
| 13 | 11/1/2009 | Changed institution class to Insured Commercial Bank, National, Member Frs. |
| 14 | 11/1/2009 | **Merged into and subsequently operated as part of Wells Fargo Bank, National Association in Sioux Falls, South Dakota (3511)** |
| 15 | 11/7/2009 | Acquired Wachovia Bank Of Colorado, Interim National Association (59019) in Denver, Colorado. |
| 16 | 3/20/2010 | Acquired Wachovia Bank, National Association (33869) in Charlotte, North Carolina. |
| 17 | 3/20/2010 | Acquired Wachovia Bank Of Delaware, National Association (33931) in Wilmington, Delaware. |
| 18 | 4/10/2010 | Acquired Wachovia Card Services, National Association (58496) in Atlanta, Georgia. |
| 19 | 5/10/2010 | Acquired Wells Fargo Hsbc Trade Bank, National Association (34075) in San Francisco, California. |
| 20 | 11/1/2010 | Acquired Wells Fargo Alaska Trust Company, National Association (57755) in Anchorage, Alaska. |
| 21 | 3/31/2011 | Acquired Wells Fargo Central Bank (26839) in Calabasas, California. |

Back

EXHIBIT F



# Corporation/LLC Search/Certificate of Good Standing

## LLC File Detail Report

| File Number | 02510693 |
|---|---|
| Entity Name | FAY SERVICING, LLC |
| Status | ACTIVE |

### Entity Information

**Principal Office**
425 S FINANCIAL PLACE STE 200
CHICAGO, IL 60605

**Entity Type**
LLC

**Type of LLC**
Foreign

**Organization/Admission Date**
Tuesday, 22 April 2008

**Jurisdiction**
DE

**Duration**
PERPETUAL

EXHIBIT F TO NOTICE OF REMOVAL
Page 100

## Agent Information

Name
REGISTERED AGENT SOLUTIONS INC

Address
901 S 2ND ST STE 201
SPRINGFIELD , IL 62704

Change Date
Tuesday, 27 March 2012

## Annual Report

For Year
2020

Filing Date
Sunday, 15 March 2020

## Managers

Name
Address
FAY, EDWARD J.
425 S FINANCIAL PLACE STE 200
CHICAGO, IL 60605

## Assumed Name

ACTIVE
CONSTRUCTIVE MORTGAGE SERVICES

ACTIVE
FAY MORTGAGE SERVICES

EXHIBIT F TO NOTICE OF REMOVAL
Page 101

## Series Name

NOT AUTHORIZED TO ESTABLISH SERIES

Return to Search

File Annual Report

Adopting Assumed Name

Articles of Amendment Effecting A Name Change

Change of Registered Agent and/or Registered Office

(One Certificate per Transaction)

This information was printed from www.cyberdriveillinois.com, the official website of the Illinois Secretary of State's Office.        Thu Jun 18 2020

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

---

**Department of State: Division of Corporations**

Allowable Characters

| | |
|---|---|
| **HOME** | |
| About Agency | |
| Secretary's Letter | |
| Newsroom | |
| Frequent Questions | |
| Related Links | |
| Contact Us | |
| Office Location | |

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
GetCorporate Status
Submitting a Request
How to Form a New Business Entity
Certifications, Apostilles & Authentication of Documents

### Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | **4528889** | Incorporation Date / Formation Date: | **4/2/2008** (mm/dd/yyyy) |
| Entity Name: | **FAY SERVICING, LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **REGISTERED AGENT SOLUTIONS, INC.** | | |
| Address: | **9 E. LOOCKERMAN STREET SUITE 311** | | |
| City: | **DOVER** | County: | **Kent** |
| State: | **DE** | Postal Code: | **19901** |
| Phone: | **888-716-7274** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[Submit]

[View Search Results]      [New Entity Search]

---

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

EXHIBIT G

2020900114800002
**El Dorado, County Recorder**
**Janelle K. Horne Co Recorder Office**
**DOC 2020-0011448-00**
**Acct 1200-Servicelink Multi Loc-Irvine**
**Wednesday, MAR 11, 2020 13:33:21**
**Ttl Pd   $94.00        Nbr-0002080516**
**JLR/C1/1-2**

Recording requested by:
ServiceLink

When Recorded Mail To:
**BARRETT DAFFIN FRAPPIER TREDER &**
**WEISS, LLP**
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320
(866) 795-1852

APN #: 122-290-09-100
Property Address:
4202 ARENZANO WAY
EL DORADO HILLS, CALIFORNIA 95762


NOTS20120015000761

Space above this line for Recorder's use only

Trustee Sale No.: 20120015000761        Title Order No.: 120054631        FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

**ATTENTION RECORDER:** THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 02/10/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP,** as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 02/22/2006 as Instrument No.** 2006-0011226-00 of official records in the office of the County Recorder of **EL DORADO** County, State of CALIFORNIA.
**EXECUTED BY:        CONCETTA S. MANZANO, A MARRIED WOMAN,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in lawful money of the United States).
**DATE OF SALE:        04/21/2020        TIME OF SALE:        10:00 AM**
**PLACE OF SALE:        AT THE MAIN STREET ENTRANCE TO THE COUNTY COURTHOUSE, 495 MAIN STREET, PLACERVILLE, CA 95667.**
**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:
**4202 ARENZANO WAY, EL DORADO HILLS, CALIFORNIA 95762**
**APN#:        122-290-09-100**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common

| Trustee Sale No. : 20120015000761 | Title Order No.: 120054631 | FHA/VA/PMI No.: |

designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$616,753.72**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 for information regarding the trustee's sale or visit this Internet Web site www.servicelinkASAP.com for information regarding the sale of this property, using the file number assigned to this case 20120015000761. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
**AGENCY SALES & POSTING**
**714-730-2727**
**www.servicelinkASAP.com**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee**
**3990 E. Concours Street, Suite 350**
**Ontario, CA 91764**
**(866) 795-1852**

BY:  Manuel Loeza                      Dated:  **03/10/2020**
**Manuel Loeza**
**Foreclosure Supervisor**

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is AFRCT LLP located at 301 North Lake Avenue, Suite 1100, Pasadena, California 91101-4158.

On the date below, I served a copy of the foregoing document entitled:

**NOTICE OF REMOVAL BY DEFENDANTS WELLS FARGO BANK, N.A., PURSUANT TO 28 U.S.C. § 1332**

on the interested parties in said case as follows:

| Served By Means Other than Electronically Via the Court's CM/ECF System: | Served By Means Other than Electronically Via the Court's CM/ECF System: |
|---|---|
| *Plaintiffs In Pro Per*<br><br>Concetta Manzano S.<br>George F. Semeil, Jr.<br>4202 Arenzano Way<br>El Dorado Hills, CA 95762<br><br>Tel: (916) 941-9016 | *Attorneys for Defendant*<br>*Fay Servicing, LLC*<br><br>Kristina Pelletier, Esq.<br>WRIGHT FINLAY & ZAK<br>4665 MacArthur Court, Suite 200<br>Newport Beach, CA 92660<br><br>T: (949) 477-5050 / F: (949) 608-9142<br>Email: kpelletier@wrightlegal.net |

☒ **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on June 19, 2020.

| Laurie Hlista | */s/ Laurie Hlista* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |

CERTIFICATE OF SERVICE

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP